GIBSON, DUNN & CRUTCHER LLP
KRISTIN A. LINSLEY, SBN 154148
  klinsley@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:   415.393.8306

KAHN A. SCOLNICK, SBN 228686
  kscolnick@gibsondunn.com
KAT RYZEWSKA, SBN 300386
  kryzewska@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

*Attorneys for Defendants*
*United Services Automobile Association and*
*USAA General Indemnity Company*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EILEEN-GAYLE COLEMAN, and ROBERT CASTRO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED SERVICES AUTOMOBILE ASSOCIATION and USAA GENERAL INDEMNITY COMPANY,<br><br>Defendants. | CASE NO. 3:21-cv-00217-CAB-LL<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>**Hearing:**<br>Date:          May 12, 2021<br>Courtroom:  15 A<br>Judge:        Hon. Cathy Ann Bencivengo<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND ................................................. 3

    A.    USAA's Founding and Gradual Expansion of Offerings. ....................... 3

    B.    CDI's Prior Approval of United Services' and GIC's Rates and Rate Structure, Including Defendants' Placement Rules. .......................... 4

    C.    Plaintiffs' Lawsuit. ........................................................................ 5

III. LEGAL STANDARD ...................................................................................... 7

IV. ARGUMENT ................................................................................................. 8

    A.    The Insurance Code Bars this Entire Action, Which Challenges Defendants' Approved Rates and Underlying Placement Rules. ............. 9

        1.    Section 1860.1 and the Filed-Rate Doctrine. ................................ 9

        2.    Section 1860.1 Precludes All of Plaintiffs' Claims. ..................... 10

    B.    Section 11628(f)(1) Expressly Allows Defendants' Challenged Practices. ..................................................................................... 13

    C.    Counts Three and Four Should be Dismissed Regardless for Failure to State a Claim and for Failing Rule 9(b)'s Heightened Pleading Standard ....................................................................................... 16

    D.    Plaintiffs Fail to State a Cognizable Claim for Military Discrimination. ............................................................................. 19

    E.    The Purely Equitable UCL Claims and All Other Requests for Equitable Relief Should Be Dismissed Regardless. ............................. 24

V. CONCLUSION .............................................................................................. 25

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Acolyte Techs. Corp. v. Jeja Int'l Corp.*,
No. 11 CV 2012, 2011 WL 4837490 (S.D. Cal. Oct. 12, 2011) .............................25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................7, 17, 18

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................7

*Candelore v. Tinder, Inc.*,
19 Cal. App. 5th 1138 (2018) ...................................................................23

*Cannon v. Wells Fargo Bank N.A.*,
917 F. Supp. 2d 1025 (N.D. Cal. 2013).......................................................9

*Carlin v. DairyAmerica, Inc.*,
705 F.3d 856 (9th Cir. 2013) ....................................................................10

*Carpenter v. Forest Meadows Owners Ass'n*,
No. 1:09-cv-01918, 2011 WL 3207778 (E.D. Cal. July 27, 2011) ...................19, 23

*Cohn v. Corinthian Colleges, Inc.*,
169 Cal. App. 4th 523 (2008) ...................................................................23

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997) ......................................................................8

*Correa v. Pacific Maritime Assoc.*,
No. 2:17-cv-03060, 2018 WL 3816719 (C.D. Cal. June 6, 2018) ...........................21

*Diehl v. Starbucks Corp.*,
No. 12CV2432, 2014 WL 295468 (S.D. Cal. Jan. 27, 2014)...................................25

*Flores v. Von Kleist*,
739 F. Supp. 2d 1236 (E.D. Cal. Sept. 10, 2010) ......................................21

*Franklin v. Gwinnett Cty. Pub. Sch.*,
503 U.S. 60 (1992).....................................................................................24

Gibson, Dunn &
Crutcher LLP

*Gardner v. Safeco Ins. Co. of Am.*,
   No. 14-CV-02024, 2014 WL 2568895 (N.D. Cal. June 6, 2014) ............................ 24

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   954 F.2d 485 (8th Cir. 1992) ................................................................................ 10

*Haligowski v. Superior Court*,
   200 Cal. App. 4th 983 (2011) ........................................................................ 19, 20

*Hartmann v. Cal. Dep't of Corr. & Rehab.*,
   707 F.3d 1114 (9th Cir. 2013) ................................................................................ 7

*Herrera v. Zumiez, Inc.*,
   953 F.3d 1063 (9th Cir. 2020) .............................................................................. 13

*California ex rel. Heryford v. First Premier Bank*,
   No. 2:16-cv-00470, 2018 WL 3197907 (E.D. Cal. June 26, 2018) ........................ 17

*Jones v. Lodge at Torrey Pines P'nship*,
   42 Cal. 4th 1158 (2008) ....................................................................................... 20

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...........................................................7, 16, 17, 18

*King v. Nat'l Gen. Ins. Co.*,
   129 F. Supp. 3d 925 (N.D. Cal. 2015)............................................................9, 11, 12

*Koire v. Metro Car Wash*,
   40 Cal. 3d 24 (1985) ............................................................................................ 23

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ............................................................................ 7, 8

*Loo v. Toyota Motor Sales, USA, Inc.*,
   No. 8:19-cv-00750, 2020 WL 4187918 (C.D. Cal. Apr. 10, 2020) ........................ 25

*Mack v. South Bay Beer Distrib.*,
   798 F.2d 1279 (9th Cir. 1986) ................................................................................ 8

*MacKay v. Superior Court*,
   188 Cal. App. 4th 1427 (2010) ...................................................................... 4, 9, 10

*Marina Point, Ltd. v. Wolfson*,
   30 Cal. 3d 721 (1982) .................................................................................... 22, 23

*Mejia v. Reed*,
   31 Cal. 4th 657 (2003) ................................................................................. 19

*Mercury Ins. Co. v. Lara*,
   35 Cal. App. 5th 82 (2019) .......................................................................4, 12

*Moradi-Shala v. Fireman's Fund Ins. Co.*,
   46 Cal. 3d 287 (1988) ................................................................................. 16

*Pacific Surrogacy USA, LLC v. Bai*,
   No. SA CV 19-01456, 2019 WL 8129615 (C.D. Cal. Nov. 5, 2019) .................... 17

*People v. Johnson*,
   50 Cal. App. 5th 620 (2020) ......................................................................... 14

*Sharma v. Volkswagen AG*,
   No. 20-CV-02394, 2021 WL 912271 (N.D. Cal. Mar. 9, 2021) ........................... 25

*Shay v. Apple Inc.*,
   No. 20CV1629, 2021 WL 75690 (S.D. Cal. Jan. 8, 2021) ................................... 25

*In re Silicon Graphics Inc. v. Secs. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ........................................................................... 8

*In re Solara Med. Supplies, LLC Cust. Data Sec. Breach Litig.*,
   No. 3:19-cv-2284, 2020 WL 2214152 (S.D. Cal. May 7, 2020) ........................... 18

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ......................................................................... 24

*Spine & Neurosurgery Assocs. v. UnitedHealthcare Ins. Co.*,
   No. 2:19-cv-00115, 2020 WL 903333 (E.D. Cal. Feb. 25, 2020) ........................ 16

*Talece Inc. v. Zheng Zhang*,
   No. 20-cv-03579, 2020 WL 6205241 (N.D. Cal. Oct. 22, 2020) ......................... 17

*Transmission Agency of N. Cal. v. Sierra Pac. Power Co.*,
   295 F.3d 918 (9th Cir. 2002) ........................................................................... 9

*United States v. Johanns*,
   17 M.J. 862 (A.F.C.M.R. 1983) ..................................................................... 14

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ....................................................................7, 17

*Villanueva v. Fid. Nat'l Title Co.*,
  -- P.3d --, 2021 WL 1031874 (Cal. Mar. 18, 2021) .................................................10

*Walker v. Allstate Indem. Co.*,
  77 Cal. App. 4th 750 (2000) ...................................................................9, 10, 11

*Wegoland Ltd. v. NYNEX Corp.*,
  27 F.3d 17 (2d Cir. 1994) ...............................................................................9

*Wilson v. City of Bakersfield*,
  No. 1:16-cv-00387, 2016 WL 4000731 (E.D. Cal. July 25, 2016) .........................23

*Wilson v. FEHC*,
  46 Cal. App. 4th 1213 (1996) ...........................................................................11

*Young v. Facebook, Inc.*,
  790 F. Supp. 2d 1110 (N.D. Cal. 2011).............................................................23

*Zhang v. Superior Court*,
  57 Cal. 4th 364 (2013) .....................................................................................16

**STATUTES**

50 U.S.C. § 3806(a)(1)........................................................................................14

Civ. Code § 51(b)..............................................................................................22

Code Regs. tit. 10, § 2632.4...........................................................................5, 17

Code Regs. tit. 10, § 2632.5(c).......................................................................5, 17

Code Regs. tit. 10, § 2632.9.............................................................................10

Ins. Code § 1860.1 ...........................................................................................9

Ins. Code § 1861.02(a)...................................................................................5, 17

Ins. Code § 1861.03(a)......................................................................................22

Ins. Code § 1861.05 ...........................................................................................6

Ins. Code § 11628(f)(1) ................................................................2, 13, 15, 22, 23

Ins. Code § 11628(f)(2) .....................................................................................14

Mil. & Vet. Code § 394(a)..................................................................................19

Gibson, Dunn &
Crutcher LLP

**OTHER AUTHORITIES**

1989 Cal. Legis. Serv. 1128 (West) ................................................................. 13

Dep't of Army, Reg. 215-1, Military Morale, Welfare, and Recreation Programs and
    Nonappropriated Fund Instrumentalities, https://tinyurl.com/e5y67xs .................. 14

Eric T. Jensen & James J. Texeira, Jr., *Prosecuting Members of the U.S. Mil. for
    Wartime Envt'l Crimes*, 17 Geo. Int'l Envt'l L. Rev. 651 ........................................ 15

Secretary of the Interior, Order No. 3387 ...................................................... 22

*Segment*, Cambridge English Dict., https://tinyurl.com/fxx4sbda ................................ 14

*Segment*, Merriam-Webster Dict., https://tinyurl.com/3eb9s5ns ................................. 14

Stats. 1991, ch. 36, § 2 ................................................................................. 19

**RULES**

Fed. R. Civ. P. 9(b) ....................................................................................... 7

# I. INTRODUCTION

This action challenges longstanding insurance practices that are neither unlawful nor unfair—far from it, they are explicitly authorized in the California Insurance Code and were considered by the California Insurance Commissioner when he approved the rates at issue. Plaintiffs also accuse Defendants of discrimination "against" members of the military, but they allege only that Defendants provided *benefits* to enlisted members of the military (in the form of insurance coverage) that are not available to non-military members of the public. This is the *opposite* of military discrimination. It should come as no surprise, then, that the Insurance Code and settled caselaw squarely preclude all of Plaintiffs' claims. The Court should dismiss them with prejudice.

USAA began in 1922, insuring just 25 Army officers. Nearly 100 years later, USAA provides auto insurance through four different companies, each of which serves "a different segment of the military or military family members." Compl. ¶ 11. Defendants are two of those entities. As alleged in the Complaint, they include

- The parent company, United Services, which insures military officers in pay grades E-7 or higher; and

- USAA General Indemnity Company ("GIC"), which insures enlisted persons in pay grades E-1 through E-6.

*Id.*[1] USAA's use of affiliates has allowed it to expand and tailor its offerings over the years; it generally is now open to *all* members of the military serving or who honorably have served, and their families. In California, members of the public with no personal or family military affiliation are not eligible for USAA's property and casualty ("P&C") insurance and generally may not obtain auto insurance coverage from *any* of the four USAA P&C insurers.

Plaintiffs' overarching theory is that because United Services has lower base

---

[1] "USAA" refers collectively to the parent company, United Services, and its affiliates. "United Services" refers only to the parent company. Only United Services and GIC are defendants in this action. The other two non-defendant USAA entities insure family members of military personnel who qualify for either United Services or GIC. Compl. ¶ 11.

Gibson, Dunn &
Crutcher LLP

collision rates in California than GIC, Defendants must scrap their longstanding Company of Placement Rules ("Placement Rules")—the criteria that determine from which USAA entity (if any) a prospective insured is eligible to purchase a policy—and allow GIC policyholders to obtain coverage from United Services.  Plaintiffs say it is unlawful "discrimination against" the military for USAA to apply its Placement Rules and preclude GIC policyholders from switching freely between companies.  Plaintiffs advance a number of variations on this theme, but each fails for multiple reasons.

For starters, Plaintiffs challenge insurance rates that the California Insurance Commissioner has specifically approved, which are premised on Placement Rules that the Commissioner specifically considered as part of Defendants' rate applications. California law precludes such a challenge.  Under the prior-approval regime, that has been in place since 1989, California's Department of Insurance ("CDI") must approve United Services' and GIC's rates *before* they may be offered to any of their respective members.  And here, CDI has done just that.  USAA's Placement Rules—the gravamen of Plaintiffs' Complaint—were submitted to CDI as part of United Services' and GIC's prior-approval rate filings.  Those Placement Rules set the eligible pool of insureds for each USAA entity, upon which each insurer sets its CDI-approved rates based on the extensive actuarial data and permissible considerations that California law and CDI require (none of which have anything to do with military rank or status).  Well-settled California law forbids Plaintiffs' attempt to upend those approvals in this Court.

Moreover, for more than thirty years, the California Insurance Code has *explicitly authorized* USAA's practice of serving different segments of the military through specially tailored subsidiary insurers.  Section 11628, subdivision (f)(1) of the Insurance Code provides that nothing in the Code "shall prohibit an insurer from limiting the issuance or renewal of insurance … to persons who engage in, or have formerly engaged in, governmental or military service *or segments of categories thereof*, and their spouses, dependents, direct descendants, and former dependents or spouses." (Emphasis added.) Accordingly, all but one of Plaintiffs' claims—each of which alleges a violation of the

Insurance Code based on USAA's limiting of insurance to well-defined segments of the military—doubly fail out of the starting gate.

Finally, Plaintiffs' characterization of USAA's longstanding (and legally approved) practice of serving different segments of the military through tailored affiliates as "military discrimination" fails on the law and the facts.  A claim of discrimination *against* members of the military requires some allegation that members of the military were denied a benefit that was otherwise available to the general public. There is no such allegation here.  In fact, the Complaint acknowledges the opposite: that USAA honors all those who serve with special insurance offerings not available to the general public.  At best, Plaintiffs accuse Defendants of discriminating *between* different segments of the military—but as a matter of law and common sense, that is not an actionable theory of discrimination *against* the military.  Regardless, the fact that USAA's challenged practices are explicitly authorized by California law forecloses Plaintiffs' claims that such practices violate California discrimination laws.

For these reasons, and the additional reasons identified below, Plaintiffs' entire Complaint fails as a matter of law.  The Court should dismiss this action with prejudice.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A.     USAA's Founding and Gradual Expansion of Offerings.

For the first six decades of its existence, USAA was a single company offering insurance exclusively to military officers.  Over time, it expanded its offerings to serve more members of the military, including veterans, dependents of the military, and even dependents of such dependents.  And at the request of enlisted personnel, this growth also saw the creation of an affiliate, GIC, dedicated to serving enlisted personnel in pay grades E-1 through E-6.  *See* Compl. ¶ 11.

Since 2009, USAA has offered insurance through four entities—each "insur[ing] a different segment of the military or military family members."  Compl. ¶ 11.

- Defendant United Services insures commissioned officers and senior non-commissioned officers in pay grade E-7 and higher.  *Id.*

- Defendant GIC serves enlisted personnel in pay grades E-1 through E-6. *Id.*
- Non-party USAA Casualty Insurance Company ("CIC") serves the family of individuals who are eligible for United Services. *Id.*
- Non-party Garrison Property and Casualty Insurance Company ("Garrison") insures military family members who are not eligible for CIC. *Id.*[2]

Eligibility for each company is mutually exclusive; military members and their family are eligible to purchase policies from only one of the USAA entities. The specific eligibility criteria for the four companies are laid out the Placement Rules, which have been periodically revised over the years.

**B.   CDI's Prior Approval of United Services' and GIC's Rates and Rate Structure, Including Defendants' Placement Rules.**

Since 1989, California has required insurers doing business in the State to obtain "prior approval" from CDI of the rates they charge policyholders. *See, e.g.*, *MacKay v. Superior Court*, 188 Cal. App. 4th 1427, 1440 (2010). The prior-approval process generally involves: (1) an insurer filing a rate application with CDI's Commissioner; (2) the Commissioner giving notice to the public of the application; (3) a (discretionary) public hearing; (4) the Commissioner's approval or disapproval of the application; and (5) limited judicial review of the Commissioner's determinations. *See id.* (citations omitted). The prior-approval process is not limited to the rates themselves; "[i]t also addresses the underlying factors that may permissibly affect rates charged by insurers and lead to insurance that is unfair, unavailable, and unaffordable." *Mercury Ins. Co. v. Lara*, 35 Cal. App. 5th 82, 89 (2019).

For the last several years (predating the class period), CDI has directed the USAA entities to submit their Placement Rules as part of their individual rate applications. The USAA entities complied and periodically resubmitted the Placement Rules whenever they materially changed. *See, e.g.*, Declaration of Kahn Scolnick ("Scolnick Decl."),

---

[2] These descriptions are taken from Plaintiff's Complaint. While the Complaint does not contain a complete description of USAA's eligibility criteria and Placement Rules, the inaccuracies are not relevant to this Motion.

*(Cont'd on next page)*

Ex. 2, at 4–5, 7, 9–14 (GIC's 2017 public rate application, amended in December 2016 to include USAA's Placement Rules).[3]  Most recently, after the Placement Rules were revised in February 2019, the USAA entities amended their 2019 rate applications to include the revised Placement Rules.  *See, e.g.*, *id.*, Ex. 1, at 3, 5, 6–8 (United Services' 2019 rate application, amended in February 2019 to include USAA's updated Placement Rules).  CDI has approved each such rate application "as it may have been amended." *Id.*, Ex. 1, at 4; *id.*, Ex. 2, at 6.

At the core of USAA's corporate structure is the statutorily authorized use of tailored insurer entities to cover particular segments of the military.  Contrary to the conclusory assertions in the Complaint, each entity's CDI-approved rates are *not based at all on military rank*—they are based on the myriad considerations mandated by California law, namely, extensive actuarial data regarding the mutually exclusive pool of policyholders in each company.  *See, e.g.*, Ins. Code § 1861.02(a) (listing factors that insurers must consider in setting rates and premiums, empowering CDI to name additional factors, and prohibiting insurers from considering unapproved factors); Code Regs. tit. 10, § 2632.5(c) (listing rating factors); *id.* § 2632.4 ("No insurer shall use a rating factor which is not set forth in these regulations[.]").

## C.    Plaintiffs' Lawsuit.

Plaintiffs Eileen-Gayle Coleman and Robert Castro filed their six-count Class Action Complaint for Damages, Equitable, and Injunctive Relief against United Services and GIC on February 4, 2021.

Plaintiffs generally assert that United Services and GIC violate provisions of the Insurance Code and Section 17200 of the Business and Professions Code ("UCL"), and discriminate against members of the military in violation of the Unruh Civil Rights Act, Civil Code Section 51 et seq. ("Unruh Act") and Section 394(a) of the Military and

---

[3]  The underlying rate filing documents are the subject of Defendants' concurrently filed Request for Judicial Notice.

Veterans Code. Each of Plaintiffs' claims is premised on USAA's longstanding practice of serving different segments of the military through different insurers that (as California law requires) each establish their own rates, *see* Ins. Code § 1861.05.

Plaintiffs' core theory is that GIC's base collision rates are higher than United Services', such that GIC's members always end up paying more for auto insurance coverage than United Services' members. But as explained further below in Section IV.C, plaintiffs have failed to plead this core theory with the requisite specificity. The case instead rests on simplistic assertions about base collision rates, even though base rates are but one of the numerous inputs (set in accordance with actuarial data approved by CDI) that determine collision coverage premiums; Plaintiffs do not account for the other inputs that may impact the premiums of GIC policyholders more favorably than they do the premiums of United Services policyholders.

Plaintiffs' first two causes of action allege UCL violations because: (a) United Services has lower base collision rates than GIC; (b) GIC does not allows its members who qualify for good driver discount policies to obtain such coverage through United Services; (c) this practice is "unlawful" in that it violates Section 1861.16(b) of the Insurance Code, which requires insurers "having common ownership" to offer a "good driver discount policy to a good driver from an insurer within the common ownership … which offers the lowest rates for that coverage." Compl. ¶¶ 17, 70–81.

Plaintiffs' third and fourth claims assert UCL violations on the theory that Defendants' failure to list "military status" as a factor used to determine premium amounts violates California's Unfair Insurance Practices Act, Insurance Code Section 790.03(b) ("UIPA"), which, among other things, prohibits insurers from making "untrue, deceptive, or misleading" representations. Compl. ¶¶ 82–90.

Plaintiffs' fifth and sixth claims allege that Defendants discriminate against the military because United Services does not offer insurance to policyholders who qualify for membership in GIC, in purported violation of the Unruh Act (Count 5) and Section 394(a) of the Military and Veterans Code (Count 6). Compl. ¶¶ 91–112.

1  Plaintiffs seek the greater of $4,000 for each class member or treble damages;
2  punitive damages; and equitable relief in the form of an injunction, disgorgement,
3  restitution, and/or a constructive trust.  Compl. at 37–38.

4  ### III. LEGAL STANDARD

5  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead
6  "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on
7  its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted);
8  *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (Rule
9  12(b)(6) dismissal is appropriate where, even accepting complaint's factual allegations
10 as true, defendant's conduct did not violate applicable law).  "A pleading that offers
11 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action
12 will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.
13 544, 555 (2007)).

14 Where a plaintiff alleges facts that "'necessarily constitute fraud,'" those
15 allegations must satisfy Rule 9(b)'s "heightened pleading standard."  *Kearns v. Ford*
16 *Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*,
17 317 F.3d 1097, 1105 (9th Cir. 2003)).  Rule 9(b) requires that a plaintiff "'state with
18 *particularity* the circumstances constituting fraud[.]'" *Id.* (quoting Fed. R. Civ. P. 9(b))
19 (emphasis added).  This requires allegations of fraud to include "the who, what, when,
20 where, and how of the misconduct charged." *Id.* (quoting *Vess*, 317 F.3d at 1106).  Rule
21 9(b) applies whether "the word 'fraud' is … used" in the complaint or fraud is "an
22 essential element of a [plaintiff's] claim"—if the allegations are "grounded in fraud" or
23 "sound in fraud," they must, "as a whole[,]" "satisfy the particularity requirement of
24 Rule 9(b)." *Id.* at 1124–25 (internal quotation marks omitted) (Rule 9(b) governs UCL
25 claims based on allegations sounding in fraud).

26 Finally, although the "general rule" is that "a district court may not consider any
27 material beyond the pleadings in ruling on a Rule 12(b)(6) motion," there are two well-
28 recognized exceptions.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)

(internal quotation marks omitted).  "First, a court may consider material which is properly submitted as part of the complaint." *Id.* (internal quotation marks omitted).  A document is considered part of the complaint—regardless of whether the plaintiff "physically attached" it—if the complaint specifically refers to the document, the document's authenticity is not questioned, and the complaint necessarily relies on it. *E.g.*, *Cooper v. Pickett*, 137 F.3d 616, 622–23 (9th Cir. 1997) (citation omitted).  Where a complaint specifically refers to a document but the plaintiff fails to attach it, the defendant may introduce the full document as an exhibit to a motion to dismiss.  *E.g.*, *id.*; *In re Silicon Graphics Inc. v. Secs. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *superseded by statute on other grounds as recognized in In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1110, 1146 (9th Cir. 1999).

"Second, under Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record'" in ruling on a motion to dismiss.  *Lee*, 250 F.3d at 688–89 (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).

## IV. ARGUMENT

Each of Plaintiffs' claims fail for multiple, independent reasons.  First, Section 1860.1 of the Insurance Code strictly precludes Plaintiffs' attempt to challenge Defendants' CDI-approved rates and underlying Placement Rules.  Second, Section 11628(f)(1) of the Insurance Code explicitly authorizes Defendants' challenged practices—namely, insuring different "segments" of the military in different companies—and forbids Plaintiffs from claiming that such practices violate the Insurance Code (as they do in Counts 1–5).  Third, Counts 3 and 4 fail for the additional reasons that California law prohibits UCL claims premised on violations of the UIPA, and Plaintiffs' allegations (which are grounded in fraud) fail the heightened pleading requirements of Rule 9(b).  Fourth, the military discrimination claims (Counts 5 & 6) fail because Plaintiffs do not allege discrimination against the military.  Fifth, the claims for equitable relief fail because Plaintiffs do not (and cannot) plead that they lack an adequate remedy at law.

**A.   The Insurance Code Bars this Entire Action, Which Challenges Defendants' Approved Rates and Underlying Placement Rules.**

This suit challenges USAA's application of its Placement Rules to arrive at the CDI-approved rates for United Services and GIC.  Plaintiffs' theories therefore run headlong into Section 1860.1 of the Insurance Code.

**1.   Section 1860.1 and the Filed-Rate Doctrine.**

The filed-rate doctrine "provides that rates duly adopted by a regulatory agency are not subject to collateral attack in court." *MacKay*, 188 Cal. App. 4th at 1448; *see also Transmission Agency of N. Cal. v. Sierra Pac. Power Co.*, 295 F.3d 918, 929 (9th Cir. 2002).  The rule is animated by "[t]he important concerns of agency authority, justiciability, and institutional competence." *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 22 (2d Cir. 1994).  Out of deference to the agency's comparative expertise, courts are to treat approved rates as "per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1036 (N.D. Cal. 2013).  "While the filed rate doctrine originated in federal courts, it has been held to apply equally to rates filed with state agencies by every court to have considered the question." *MacKay*, 188 Cal. App. 4th at 1449 (internal quotation marks omitted).

In California, the filed-rate doctrine is "analogous to the scheme explicitly embodied in the Insurance Code" at Section 1860.1.  *See Walker v. Allstate Indem. Co.*, 77 Cal. App. 4th 750, 757 n.4 (2000).  Section 1860.1 provides:

> No act done, action taken or agreement made pursuant to the authority conferred by this chapter shall constitute a violation of or grounds for prosecution or civil proceedings under any other law of this State heretofore or hereafter enacted which does not specifically refer to insurance.

Ins. Code § 1860.1.  This language has "been interpreted to provide exclusive original jurisdiction over issues related to ratemaking to the commissioner."  *Walker*, 77 Cal. App. 4th at 755 (citations omitted); *see also King v. Nat'l Gen. Ins. Co.*, 129 F. Supp. 3d 925, 935 (N.D. Cal. 2015) ("Section 1860.1 precludes litigation against acts done pursuant to [CDI's] ratemaking authority[.]").  Because of Section 1860.1, "there is no

tort liability for charging a rate that has been approved by the commissioner." *MacKay*, 188 Cal. App. 4th at 1449. A contrary result would "frustrate the power granted to the commissioner by the voters to set insurance rates after soliciting both insurer and consumer input into his decision." *Walker*, 77 Cal. App. 4th at 758.[4]

The applicability of the filed-rate doctrine does not "depend on the nature of the cause of action the plaintiff seeks to bring." *Carlin v. DairyAmerica, Inc.*, 705 F.3d 856, 869 (9th Cir. 2013) (quotations omitted). Rather, "the doctrine is to be applied strictly to prevent a plaintiff from bringing a cause of action whenever the purposes underlying the filed rate doctrine are implicated." *Id.* (cleaned up); *see also H.J. Inc. v. Nw. Bell Tel. Co.*, 954 F.2d 485, 489 (8th Cir. 1992) ("[T]he focus for determining whether the filed rate doctrine applies is the impact the court's decision will have on agency procedures and rate determinations.").

### 2. Section 1860.1 Precludes All of Plaintiffs' Claims.

Plaintiffs contest GIC's alleged practice of charging higher base collision rates to its members (enlisted personnel) than United Services charges to its members (officers), even though GIC policyholders are not eligible to purchase policies from United Services, and vice versa.

The fixed, mutually exclusive composition of eligible policyholders for each USAA affiliate undergirds the rate-setting process for that insurer, allowing it and CDI to accurately assess the risk of loss posed by a defined group of insureds. The rate calculated and offered by each affiliate cannot be separated from the risk of loss posed by its specific member pool; each insurer's CDI-required and approved class plan must be built upon extensive actuarial data pertaining to its pool of insureds. *See*, *e.g.*, Code

---

[4] In ruling on the applicability of a parallel provision in the Insurance Code, the California Supreme Court recently confirmed that under Section 1860.1, an insurer cannot be subject to civil liability for "charging these filed and approved rates." *Villanueva v. Fid. Nat'l Title Co.*, -- P.3d --, 2021 WL 1031874, at *10 (Cal. Mar. 18, 2021) (distinguishing *Walker* and *MacKay*, where insurers were sued for charging rates authorized and approved by the Commissioner, from a suit premised on an insurer charging *unfiled* rates).

Gibson, Dunn & Crutcher LLP

Regs. tit. 10, § 2632.9 (Use of Data).  A significant change to the composition of any affiliate's policyholders would necessitate a change to that affiliate's rates.  If Plaintiffs were to prevail here, it potentially would require USAA to overhaul its Placement Rules and revisit the CDI-approved rates charged by both United Services and GIC.

The CDI-approved rates of the USAA entities are inextricably intertwined with the composition of their member pools, set forth in the Placement Rules that CDI considered when evaluating each company's rate applications.  *See* Scolnick Decl., Ex. 1, at 3, 5, 6–8 ; *id.*, Ex. 2, at 4–5, 7, 9–14.  This is only logical, as each insurer's rates are inherently built on actuarial data reflecting its limited eligibility and member pool.  *Cf. Wilson v. FEHC*, 46 Cal. App. 4th 1213, 1221 (1996) (insurer's decision to exclude individuals from coverage based on age was "inherently intertwined" with "its evaluation of risks presented" by the policy and its "general insurance underwriting policies").

As Plaintiffs would have it, USAA must abandon its Placement Rules and enroll them in a company (United Services) for which they are ineligible.  This change would necessarily preclude each USAA affiliate from charging its filed-and-approved rates— since those rates are based on the unique characteristics and actuarial data concerning each affiliate's specific member pool, as defined in the Placement Rules.  As but one example, because GIC members are typically younger than United Services members, GIC's average rates necessarily take into account the actuarial data reflecting that individuals with fewer years of driving experience pose a higher risk of loss.  The cross-enrollment that Plaintiffs demand, however, would upend the careful rate-setting based on these considerations; this Court would necessarily need to order Defendants and CDI to go back to the drawing board.  That is precisely the disruption Section 1860.1 seeks to avoid.  *See Walker*, 77 Cal. App. 4th at 758 (Section 1860.1 "embodies the finality of the commissioner's ratemaking decision.").

Plaintiffs will likely point to the Northern District's decision in *King v. National General Insurance Company*, but that case is distinguishable.  There, the plaintiffs

challenged the defendant insurers' alleged failure to offer a good driver discount policy as required by Section 1861.16(b), and the court found Section 1860.1 inapplicable. *King*, 129 F. Supp. 3d at 935–36. The insurers in *King*, however, did not dispute the plaintiffs' entitlement to the lower rate. *Cf. id.* And there was nothing intertwined with the insurers' approved rates that constrained their ability to offer the plaintiffs the lower rate they demanded (indeed, the insurers made no such argument). As a result, the plaintiffs' claims challenged the insurers' "allegedly wrongful *application* of the approved rates, i.e., the conduct and practices that result in [p]laintiffs being offered a policy with a higher [CDI]-approved rate when they should have been offered a policy with a lower [CDI]-approved rate"—*not* "the reasonableness of any particular insurance rate" or an "act[] done pursuant to [CDI's] rate-making authority," challenges that would be insulated by Section 1860.1. *Id.* at 936 (emphasis added).

Here, by contrast, under the Placement Rules submitted (at CDI's request) to CDI, which inform the CDI-approved rates for each entity, Plaintiffs are undisputedly not eligible to be enrolled in United Services or to pay United Services' allegedly lower base collision rates. Plaintiffs' challenge thus necessarily targets USAA's Placement Rules because those rules informed both United Services' and GIC's CDI-approved rates, as the unique member pool for each company helps to inform the actuarial considerations and data that CDI considers when approving rates. *See Mercury*, 35 Cal. App. 5th at 89 (prior approval "is not limited in scope to rate regulation," but "also addresses the underlying factors that may impermissibly affect rates charged by insurers and lead to insurance that is unfair, unavailable, and unaffordable" (quotations omitted)).

Plaintiffs seek to force USAA to do away with its affiliates' limited eligibility and effectively to enroll Plaintiffs and class members in a different insurance company that they are not otherwise eligible for. This radical restructuring would send the risk pool of each affiliate into flux and likely would require USAA to overhaul its CDI-approved rates. Accordingly, the Court should rely on Section 1860.1 to dismiss Plaintiffs' claims.

**B.      Section 11628(f)(1) Expressly Allows Defendants' Challenged Practices.**

Plaintiffs' first five claims—each alleging violations of the Insurance Code—are legally defective because the Code authorizes the challenged practices.

Section 11628(f)(1)—added in 1989 (1989 Cal. Legis. Serv. 1128 (West))—provides that nothing in the Insurance Code "shall prohibit an insurer from limiting the issuance or renewal of insurance … to persons who engage in, or have formerly engaged in, governmental or military service *or segments of categories thereof*, and their spouses, dependents, direct descendants, and former dependents or spouses."   Ins. Code § 11628(f)(1) (emphasis added).[5]  This forecloses Plaintiffs' first five claims.

*First*, Section 11628(f)(1) prevents a private plaintiff from suing an insurer for an alleged violation of the Insurance Code premised on that insurer limiting its offerings only to "segments of" "persons who engage in" "military service[.]"  In construing this provision, the Court should apply the plain and commonsense meaning of the text.  *See*, *e.g.*, *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1071 (9th Cir. 2020) ("Statutory interpretation under California law begins with the words themselves, giving them their plain and commonsense meaning. … If the language is clear and unambiguous our inquiry ends." (internal quotation marks omitted)).

The plain meaning of insuring "segments of" those engaged in military service naturally includes an insurer that offers coverage only to members of the military in certain grades, but not others.  The Complaint is predicated on this very theory:  "Each of the four USAA companies insures *a different segment of the military* or military family members. … United Services insures commissioned officers as well as senior non-commissioned officers in pay grades E-7 or higher[,]" and "[]GIC insures enlisted people in pay grades E-1 through E-6."  Compl. at 6–7 (emphasis added).

---

[5]  Section 11628(f)(1) provides a limited exception for violations of "Article 4 (commencing with Section 11620)."  This exception is irrelevant here because none of the Insurance Code provisions relied on in the Complaint are in Article 4.

Gibson, Dunn &
Crutcher LLP

Dictionary definitions of "segment" likewise support this straightforward reading of Section 11628(f)(1). *See, e.g.*, *People v. Johnson*, 50 Cal. App. 5th 620, 633 (2020) ("In the absence of a specifically defined [statutory] meaning, we look to the plain meaning of a word or phrase as understood by the ordinary person, which would typically be a dictionary definition."). A "segment" means "one of the smaller groups or amounts that a larger group or amount can be divided into" (*segment*, Cambridge English Dict., https://tinyurl.com/fxx4sbda (last visited April 7, 2021)), "any of the parts into which something can be divided" (*id.*), and "a separate piece of something" (*segment*, Merriam-Webster Dict., https://tinyurl.com/3eb9s5ns (last visited April 7, 2021)). *See Johnson*, 50 Cal. App. 5th at 633 (consulting these same dictionaries to determine the plain meaning of a California statute). United Services' and GIC's longstanding practices of limiting insurance offerings to some (but not all) of those engaged in military service plainly fit those definitions.

Notably, the officer/enlisted distinction between United Services' and GIC's respective memberships is the paradigmatic form of segmenting persons engaged in military service. Section 11628(f) itself, in defining "military service," lists "officers" and "enlisted persons" as separate examples of individuals engaged in military service. Ins. Code § 11628(f)(2). And federal statutes, military regulations, military cases, and scholarship alike routinely recognize (and operate against the backdrop of) this distinction. *See, e.g.*, Dep't of Army, Reg. 215-1, Military Morale, Welfare, and Recreation Programs and Nonappropriated Fund Instrumentalities, § 8-24b (Sept. 24, 2010) (available at https://tinyurl.com/e5y67xs) (authorizing separate military clubs for officers, noncommissioned officers, and enlisted individuals, and permitting special community clubs to serve multiple of those segments of the armed forces).[6]

---

[6] *See also, e.g.*, 50 U.S.C. § 3806(a)(1) (discussing "[c]omissioned officers, warrant officers," and "enlisted men"); *United States v. Johanns*, 17 M.J. 862, 873 (A.F.C.M.R. 1983) (noting "social intercourse whatever between officers and enlisted personnel" traditionally "subjected both categories of offenders to immediate
*(Cont'd on next page)*

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO: 3:21-CV-00217-CAB-LL

Gibson, Dunn & Crutcher LLP

*Second*, each of Plaintiffs' first five claims is premised on the notion that Defendants violate the Insurance Code by limiting insurance offerings to only officers or enlisted members, but not both through the same insurer.[7]  Indeed, a majority of those claims (Counts One, Two, and Five) allege violations of Article 10 (commencing with Section 1861.01) of Chapter 9 of Part 2 of Division 1 of the Insurance Code—even though Section 11628 *explicitly* states that an insurer does not violate those provisions by limiting insurance offerings to only segments of the military.   Ins. Code § 11628(f)(1); *see also id.* (stating that the practices also do not violate "any other provision of" the Insurance Code).

Accordingly, Plaintiffs' Claims One through Five should be dismissed pursuant to Section 11628(f)(1), which makes clear that nothing in the Insurance Code "shall prohibit" the challenged practices.

---

court-martial"), *aff'd in part, rev'd in part*, 20 M.J. 155 (C.M.A. 1985), *overruled on other grounds by United States v. Boyett*, 42 M.J. 150 (C.A.A.F. 1995)); Eric T. Jensen & James J. Texeira, Jr., *Prosecuting Members of the U.S. Mil. for Wartime Envt'l Crimes*, 17 Geo. Int'l Envt'l L. Rev. 651, n.99 ("The military rank structure is generally divided into four categories: commissioned officers, warrant officers, noncommissioned officers, and enlisted personnel.").

[7]  *See* Compl. at 28–29 (Count One:  UCL claim "based on violation of [Ins. Code] § 1861.16(b)" because United Services policies are made available only to officers and not GIC's enlisted policyholders); *id.* at 29–30 (Count Two: UCL claim "based on [Ins. Code] § 1861.16(b)" because United Services policies are made available only to officers and not GIC's enlisted policyholders); *id.* at 30–31(Count Three: UCL claim "based on violation of [Ins. Code] § 790.03(a)" because Defendants purportedly consider military status in determining premiums, without informing policyholders of that consideration, by virtue of Defendants' limiting eligibility to purchase policies to segments of the military); *id.* at 31–33 (Count Four: UCL claim "based on violation of [Ins. Code] § 790.03(b) because Defendants purportedly consider military status in determining premiums, without informing policyholders of that consideration, by virtue of Defendants' limiting eligibility to purchase policies to segments of the military); *id.* (Count Five: Violation of the Unruh Act, made "applicable to the business of insurance" by Ins. Code "§ 1861.03(a)," because United Services' limiting eligibility to officers in pay grades E-7 or higher allegedly constitutes discrimination on the basis of military status).

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO: 3:21-CV-00217-CAB-LL

**C.      Counts Three and Four Should be Dismissed Regardless for Failure to State a Claim and for Failing Rule 9(b)'s Heightened Pleading Standard.**

Plaintiffs' third and fourth claims are legally defective and should be dismissed for at least two reasons.

First, both claims explicitly assert a UCL violation "based on" an alleged violation of the UIPA. Compl. at 30 (Count 3: "violation of [UCL] … based on violation of § 790.03(a)" (formatting modified)); *id.* at 31 (Count 4: "violation of [UCL] … based on violation of § 790.03(b)" (formatting modified)). But the California Supreme Court has long held that in enacting the UIPA, the Legislature did not "create a private civil cause of action against an insurer that commits one of the various acts" it proscribes. *Moradi-Shala v. Fireman's Fund Ins. Co.*, 46 Cal. 3d 287, 304 (1988).

It is equally clear that a plaintiff may not—as Plaintiffs have attempted to do here—plead around the UIPA's bar on private rights of action by pleading a UCL claim "based on" an alleged UIPA violation. Most recently, in *Zhang v. Superior Court*, 57 Cal. 4th 364 (2013), the California Supreme Court held that "a litigant may not rely on the proscriptions of section 790.03 as the basis for a UCL claim." *Id.* at 384; *see also id.* at 379 n.8 ("[T]he provisions of section 790.03 may not be borrowed to serve as a basis for a UCL action, even though section 1861.03 specifies that the 'business of insurance' is subject to the provisions of the UCL."). Consequently, this Court should dismiss Plaintiffs' third and fourth causes of action. *See, e.g.*, *Spine & Neurosurgery Assocs. v. UnitedHealthcare Ins. Co.*, No. 2:19-cv-00115, 2020 WL 903333, at *5 (E.D. Cal. Feb. 25, 2020) ("[A] UIPA violation cannot alone form the basis of a UCL claim, as a matter of law.").

Second, apart from Plaintiffs' inability to plead a UCL claim "based on" an alleged UIPA violation, the Court should dismiss the third and fourth claims because they are grounded in fraud but not pleaded with the requisite particularity. As many courts have held, if a UCL "claim is said to be 'grounded in fraud' … the pleading of that claim as a *whole* must satisfy the particularity requirement of Rule 9(b)." *Kearns*,

Gibson, Dunn &
Crutcher LLP

1   567 F.3d at 1127 (quoting *Vess*, 317 F.3d at 1102) (emphasis in the original); *see also*
2   *Talece Inc. v. Zheng Zhang*, No. 20-cv-03579, 2020 WL 6205241, at *2 (N.D. Cal. Oct.
3   22, 2020) (same).

4       The operative allegations supporting Plaintiffs' third and fourth claims—that
5   USAA made "material and misleading" "representations" to "Enlisted Policyholders,"
6   "deceiv[ing]" them in regards to whether military service was a factor considered in
7   setting premiums (Compl. at 3, 30–33)—are plainly "tantamount to an allegation of
8   fraud," so they must be pleaded with particularity. *California ex rel. Heryford v. First*
9   *Premier Bank*, No. 2:16-cv-00470, 2018 WL 3197907, at *4 (E.D. Cal. June 26, 2018);
10  *see also Pacific Surrogacy USA, LLC v. Bai*, No. SA CV 19-01456, 2019 WL 8129615,
11  at *3 (C.D. Cal. Nov. 5, 2019) ("Fraudulent allegations include allegations of false
12  representations, knowledge of the falsity, and intent to defraud.").

13      Plaintiffs' allegations of material and misleading representations fail to satisfy
14  Rule 9(b)'s requirement of pleading "the who, what, when, where, and how of the
15  misconduct alleged." *Kearns*, 567 F.3d at 1126 (quoting *Vess*, 317 F.3d at 1106).  As
16  an initial matter, Plaintiffs make no attempt to explain *how* Defendants "consider
17  military status in determining premiums," let alone when they do so.  Compl. ¶ 33.
18  Plaintiffs simply rely on the boilerplate assertion that Defendants "in fact" did so.  *See*
19  *id.* ¶¶ 39, 83, 87, 88.  "Naked assertions devoid of further factual enhancement," offering
20  mere "labels and conclusions," do not suffice even under the normal pleading standards,
21  *Iqbal*, 556 U.S. at 678 (cleaned up), let alone under Rule 9(b).

22      Plaintiffs never explain how premiums—which are set, submitted to, and filed
23  with CDI by each entity—are actually determined with reference to military status,
24  especially given (as Plaintiffs recognize) that each entity is composed of individuals with
25  comparable military status.  California law and CDI strictly regulate the factors that an
26  insurer must or may consider in determining premiums (*e.g.*, Ins. Code § 1861.02(a);
27  Code Regs. tit. 10, § 2632.5(c); *id.* § 2632.4), which are the very factors that GIC told
28  Plaintiffs it would consider in determining their premiums (Compl. Ex. A).  There is no

17

allegation that GIC's rate applications to CDI or its actuarial documents actually include military status as a consideration in setting those premiums—because they do not. Instead, the *only* use of military status referenced in the Complaint is the fact that USAA entities limit who may purchase their policies to those individuals who qualify—a practice the Insurance Code explicitly authorizes. An eligibility determination is simply not a setting of rates or premium amounts. To the extent that Plaintiffs ask this Court to infer that determining whether an individual is eligible to purchase a policy from either United Services or GIC somehow constitutes a premium determination, that is not "plausible on its face." *Iqbal*, 556 U.S. at 678.

Similarly, Plaintiffs allege in conclusory fashion that (at some point) they and the class members were sent a document listing types of information used to determine premium amounts, but that document did not list military status. Compl. ¶¶ 33, 47, 50. Of course, there would be nothing misleading about such a document, because military status is *not* used to determine premiums, as just explained. But in any event, Plaintiffs never allege that they (or any/all of the proposed class members) ever read these statements, "*when*" (if ever) they were "exposed to them," or whether they actually found them to be material or would have cancelled their policies or taken any different actions had Defendants (inaccurately) listed military status as a factor in determining premiums. *Kearns*, 567 F.3d at 1126. Rule 9(b) requires more. *See In re Solara Med. Supplies, LLC Cust. Data Sec. Breach Litig.*, No. 3:19-cv-2284, 2020 WL 2214152, at *9 (S.D. Cal. May 7, 2020) (Rule 9(b) requires a plaintiff bringing a UCL fraud claim to "plead that he or she actually relied on the misrepresentation," i.e., "that the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct," and to "include an account of the time, place, and specific content of the false representations at issue" (cleaned up)).

Accordingly, even if Plaintiffs' third and fourth claims were not foreclosed by Section 11628(f)(1) (they are), they should still be dismissed.

**D.      Plaintiffs Fail to State a Cognizable Claim for Military Discrimination.**

Plaintiffs' fifth and sixth causes of action assert violations of the Unruh Act and Section 394(a) of the Military & Veterans Code, respectively.  *See* Compl. at 33–37. These claims fail for several independent reasons beyond those set forth above.

First, Military and Veterans Code Section 394(a) is "a California *employment discrimination* statute…."  *Haligowski v. Superior Court*, 200 Cal. App. 4th 983, 990 (2011) (emphasis added).  Plaintiffs' allegations have nothing to do with employment discrimination.  Instead, they are asking this Court to *expand* Section 394(a) *beyond* the employment context—something that no court has ever done, and that case law, statutory language, and legislative history all squarely foreclose.

Section 394(a) provides in relevant part:

> A person shall not discriminate against a member of the military … because of that membership.  A member of the military forces shall not be prejudiced or injured by a person, employer, or officer or agent of a corporation, company, or firm in terms, conditions, or privileges with respect to that member's employment, position or status or be denied or disqualified for employment by virtue of membership or service in the military forces[.]

Mil. & Vet. Code § 394(a).

The goal of construing a statute is to "ascertain the intent of the drafters so as to effectuate the purpose of the law."  *Mejia v. Reed*, 31 Cal. 4th 657, 663 (2003).  And, as California and federal courts have recognized, "[t]he Legislature explained its intent with respect to section 394 thusly: 'It is the intent of the Legislature that persons who are members of the military services not be harmed by virtue of that membership, *with respect to their employment*.'"  *Haligowski*, 200 Cal. App. 4th at 987 (quoting Stats. 1991, ch. 36, § 2, p. 128) (emphasis added); *see also Carpenter v. Forest Meadows Owners Ass'n*, No. 1:09-cv-01918, 2011 WL 3207778, at *18 (E.D. Cal. July 27, 2011) (same).  That is why California courts have consistently labeled Section 394 "a California employment discrimination statute."  *Haligowski*, 200 Cal. App. 4th at 990.

Gibson, Dunn &
Crutcher LLP

Plaintiffs attempt to read "person" in Section 394(a) to cover any individuals (or entities) who allegedly discriminate—in any context—against a member of the military. *See* Compl. ¶ 104.   But this expansive reading cannot be squared with the Court of Appeal's holding that even in the employment context, individual employees and managers who are not themselves employers cannot be liable under Section 394(a). *Haligowski*, 200 Cal. App. 4th at 986 (Section 394, like other "employment discrimination statute[s]," "allows servicemen and servicewomen plaintiffs to hold their employers, but not individual employees, liable for discrimination."); *see also id.* at 993 (noting that the Supreme Court had construed a "similar" provision and "rejected the argument that the use of 'person'" in an employment discrimination statute "compels the conclusion that all persons who engage in prohibited [activity] are personally liable, not just the employer" (citing *Jones v. Lodge at Torrey Pines P'nship*, 42 Cal. 4th 1158, 1162 (2008))).

To be sure, the Legislature *has* expressed its intent that portions of Section 394 prohibit discrimination outside the employment context, just as the Unruh Act does.  For example, Section 394, subsection (c), explicitly has nothing to do with employment.  It instead applies when a member of the military is denied entrance into "any public entertainment or place of amusement" because they are wearing a uniform.   And subsection (f) of Section 394 targets discrimination in "lending or financing."  But there is no indication that subsection (a) applies outside the employment context.

In short, the text, legislative history, and case law construing Section 394(a) clarify that it deals only with employment discrimination.  Plaintiffs' sixth cause of action—which does not allege employment discrimination—should be dismissed.

Second, even if a non-employment discrimination claim could be brought under Section 394(a), Plaintiffs' fifth and sixth causes of action should still be dismissed because Plaintiffs fail to allege that Defendants discriminated *against* any members of the military, enlisted or otherwise.  To the contrary, Plaintiffs allege only that Defendants provided *benefits* to enlisted members of the military (in the form of insurance coverage)

that are not available to non-military members of the public.  This is the *opposite* of discrimination against members of the military.

Section 394(a) requires plaintiffs to plead and prove that Defendants discriminated against them "because of" their membership in the military.  District courts construing this "because of" language have unanimously concluded that a military discrimination claim fails where—as here—there is no dispute that a defendant "would have taken the same action *without regard to* the [plaintiff's] military service." *Flores v. Von Kleist*, 739 F. Supp. 2d 1236, 1258 (E.D. Cal. Sept. 10, 2010) (formatting modified) (construing the "because of" language in Section 394(d)); *see also Correa v. Pacific Maritime Assoc.*, No. 2:17-cv-03060, 2018 WL 3816719, at *6 (C.D. Cal. June 6, 2018) (applying *Flores* to reject a Section 394(a) claim).  This interpretation makes perfect sense:  If an action would have been taken without regard to an individual's military service, then the action cannot be found to have been taken *because of* that individual's military service.

Here, Plaintiffs concede that only officers in grades E-7 or higher are eligible to purchase policies from United Services.  Compl. ¶ 11.  As a result, Plaintiffs do not and cannot allege that they (or the putative class members) would have been able to obtain policies from United Services "without regard to [their] military service," that is, if they were unaffiliated with the military entirely.  *Flores*, 739 F. Supp. 2d at 1258.  Quite the opposite:  Plaintiffs would be unable to enroll in *any* USAA policy in California without their military affiliation.  So the allegation that Plaintiffs were denied an even greater benefit because they lacked *qualifying* military service does not amount to an actionable claim that they were denied a benefit *because of* their military service.

Plaintiffs' novel theory of military discrimination is that offering a benefit to some (but not all) segments of the military amounts to discrimination against non-qualifying segments of the military "because of" their military service.  This theory is not only unsupported by any case law, it would lead to absurd outcomes and render unlawful countless longstanding practices of businesses and government alike.  For example,

1  businesses would no longer be able to offer discounts to active-duty members of the
2  military, such as discounted movie tickets, free checked bags, or trial offerings.
3  Likewise, the Secretary of the Interior would be "discriminating" against members of
4  the military by offering active-duty military and veterans different "recreation pass[es]"
5  to access public lands managed by the National Park Services.  *See, e.g.*, Secretary of
6  the Interior, Order No. 3387 (Oct. 28, 2020) 1–2 (authorizing a new "recreation pass"
7  offering for veterans, separate from the traditional pass available to active-duty military).
8  And of course, Plaintiffs' theory would render unlawful the very "segment[ing]"
9  practices that California law explicitly authorizes.  *See* Ins. Code § 11628(f)(1).

10  Because the Complaint fails to include any allegation that, *but for* their military
11  service, Plaintiffs would have been able to purchase a policy from United Services,
12  Plaintiffs fail to state a claim under Section 394(a) for discrimination "because of" their
13  military service.

14  Third, Plaintiffs' related military-discrimination claim under the Unruh Act
15  (Compl. at 33–35) fails for similar reasons.  The Unruh Act provides:

16     All persons within the jurisdiction of this state are free and equal, and no
17     matter what their sex, race, color, religion, ancestry, national origin,
18     disability, medical condition, genetic information, marital status, sexual
       orientation, citizenship, primary language, or immigration status are
19     entitled to the full and equal accommodations, advantages, facilities,
20     privileges, or services in all business establishments of every kind
       whatsoever.

21  Civ. Code § 51(b); *see* Ins. Code § 1861.03(a) (making the Unruh Act applicable to
22  "[t]he business of insurance").  Courts have construed "the identification of particular
23  bases of discrimination" in the Unruh Act as "illustrative rather than restrictive," holding
24  broadly that "the Legislature intended to prohibit all arbitrary discrimination by business
25  establishments."  *Marina Point, Ltd. v. Wolfson*, 30 Cal. 3d 721, 725 (1982) (emphases
26  omitted).  Although the Legislature has specifically "clarif[ied] that discrimination
27  prohibited under *subdivision (c)* of Section 394 of the Military and Veterans Code"—
28  that is, discrimination based on a member of the military's wearing of "the uniform of

Gibson, Dunn &
Crutcher LLP

1   the organization to which the member belongs"—is prohibited by the Unruh Act's bar

2   on "all arbitrary discrimination by business establishments," *Carpenter*, 2011 WL

3   3207778, at *16, *18 (internal quotation marks omitted), it has not explicitly done the

4   same for discrimination based on an individual's military status.

5        Yet even assuming that arbitrary discrimination on the basis of military status

6   violates the Unruh Act, there is nothing arbitrary about the practices challenged here.

7   California law is clear "that an otherwise prohibited 'discriminatory practice' will be

8   upheld as reasonable, and therefore not arbitrary, 'when there is a strong public policy

9   in favor of such treatment.'" *Candelore v. Tinder, Inc.*, 19 Cal. App. 5th 1138, 1153

10  (2018) (quoting *Koire v. Metro Car Wash*, 40 Cal. 3d 24, 31 (1985)).  Courts "glean[]"

11  public policy "by reviewing other statutory enactments[;]" discrimination that is itself

12  authorized by law—or which merely serves an interest generally pursued by law—"is

13  not arbitrary because it is based on a 'compelling societal interest' and does not violate

14  the Act." *Koire*, 40 Cal. 3d at 31 (quoting *Marina Point*, 30 Cal. 3d at 743).  Here, the

15  alleged discriminatory practices (limiting insurance offerings to different segments of

16  the military at the exclusion of others) are explicitly authorized by California law (Ins.

17  Code § 11628(f)(1)), and so cannot be arbitrary within the meaning of the Unruh Act.

18       Finally, the Unruh Act claim also fails for the same reason the Section 394(a)

19  claim fails:  Plaintiffs do not allege that Defendants discriminated *against* any members

20  of the military.  Like Section 394(a), the Unruh Act requires a plaintiff "to allege facts

21  supporting a conclusion that [she] suffered discrimination *because of*" her protected

22  characteristic.  *See, e.g.*, *Wilson v. City of Bakersfield*, No. 1:16-cv-00387, 2016 WL

23  4000731, at *6 (E.D. Cal. July 25, 2016); *Young v. Facebook, Inc.*, 790 F. Supp. 2d

24  1110, 1116 (N.D. Cal. 2011); *Cohn v. Corinthian Colleges, Inc.*, 169 Cal. App. 4th 523,

25  528 (2008).  Plaintiffs indisputably could not have purchased United Services policies

26  if they were not members of the military.  Thus, they have not alleged that they were

27  denied a benefit *because of their military status*, and the Court should dismiss this claim.

28  *See, e.g.*, *Wilson*, 2016 WL 4000731, at *6.

**E.     The Purely Equitable UCL Claims and All Other Requests for Equitable Relief Should Be Dismissed Regardless.**

Because Plaintiffs have made no attempt to plead that their remedies at law are inadequate, the Court should dismiss their UCL claims and all other requests for equitable relief.  It is "axiomatic" that a plaintiff may not pursue a claim for equitable relief unless she can show that the remedies available at law are inadequate.  *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 75–76 (1992).  Where a plaintiff "fails to explain how his alleged injury cannot be remedied by the payment of damages," her equitable claims should be dismissed.  *Gardner v. Safeco Ins. Co. of Am.*, No. 14-CV-02024, 2014 WL 2568895, at *8 (N.D. Cal. June 6, 2014).

Last year, the Ninth Circuit applied this rule in the UCL context in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  There, the plaintiff brought an equitable claim under the UCL for injunctive relief and restitution, and sought injunctive relief, restitution, and damages under the Consumers Legal Remedies Act (CLRA).  *See id.* at 838.  After a class had been certified and the defendant's motion for summary judgment denied, the plaintiff dropped her legal claim under the CLRA to avoid a jury trial.  *See id* at 837–38.  In response, the defendant moved to dismiss the UCL claim on the ground that the plaintiff had an adequate remedy at law.  *See id.*  The district court granted the motion without leave to amend.  *See id.*

The Ninth Circuit affirmed.  It explained that "a federal court must apply traditional equitable principles before awarding restitution under the UCL…."  971 F.3d at 841.  Not only did the operative complaint fail to allege that the plaintiff lacked an adequate legal remedy, but the plaintiff conceded that she sought "the same sum in equitable restitution … as she requested in damages to compensate her for the same past harm."  *Id.* at 844.  Because the plaintiff could not show that damages would be "inadequate or incomplete," equitable relief was unwarranted.  *Id.*

Here, Plaintiffs' equitable claims necessarily fail because nowhere in their Complaint do they explain why the damages they seek—including "three times actual

Gibson, Dunn &
Crutcher LLP

damages" and punitive damages, *see* Compl. ¶ 101 and p. 38—would be inadequate to remedy any alleged harm.  The crux of Plaintiffs' claims is that they paid GIC premiums that were too high, such that they lost money, which is "exactly the type of injury for which legal remedies are appropriate."  *Sharma v. Volkswagen AG*, No. 20-CV-02394, 2021 WL 912271, at *8 (N.D. Cal. Mar. 9, 2021) (damages would be adequate to remedy a "loss of money and/or loss in value").

Any attempt in an amended pleading to articulate why damages would be inadequate would be futile.  Plaintiffs' UCL and other claims for equitable relief are premised on the same factual basis as their legal claims—the alleged difference in collision coverage base rates charged to enlisted personnel and officers.  "[W]here an equitable claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action."  *Loo v. Toyota Motor Sales, USA, Inc.*, No. 8:19-cv-00750, 2020 WL 4187918, at *7 (C.D. Cal. Apr. 10, 2020) (brackets omitted).  In any event, *Sonner* resolved a split among district courts as to whether plaintiffs may plead a claim for equitable relief in the alternative "if they have alleged a claim that would provide an adequate remedy at law," answering in the negative.  *Shay v. Apple Inc.*, No. 20CV1629, 2021 WL 75690, at *9 (S.D. Cal. Jan. 8, 2021).

Plaintiffs also have not explained why treble damages and, especially, punitive damages, which are intended to deter "future wrongful acts," *Diehl v. Starbucks Corp.*, No. 12CV2432, 2014 WL 295468, at *12 (S.D. Cal. Jan. 27, 2014), would be insufficient, such that the "extraordinary remedy" of an injunction is warranted, *Acolyte Techs. Corp. v. Jeja Int'l Corp.*, No. 11 CV 2012, 2011 WL 4837490, at *3 (S.D. Cal. Oct. 12, 2011).  Plaintiffs' failure to plead the absence of an adequate remedy at law therefore warrants dismissal of their UCL claims and all other claims for equitable relief.

## V. CONCLUSION

For these reasons, this Court should dismiss Plaintiffs' Complaint with prejudice.

1    Dated: April 7, 2021

2

3                                    GIBSON, DUNN & CRUTCHER LLP

4

5                                    By:  */s/ Kahn Scolnick*
                                          Kahn Scolnick

6                                    *Attorney for Defendants United Services*
                                     *Automobile Association and USAA General*
7                                    *Indemnity Company*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28