UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EILEEN-GAYLE COLEMAN and ROBERT CASTRO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED SERVICES AUTOMOBILE ASSOCIATION and USAA GENERAL INDEMNITY COMPANY,<br><br>Defendants. | Case No.: 21-cv-217-CAB-LL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>[Doc. No. 17] |

This matter comes before the Court on Defendants United Services Automobile Association and USAA General Indemnity Company's (collectively, "Defendants") motion to dismiss. [Doc. No. 17.] The motion has been fully briefed and the Court finds it suitable for determination on the papers submitted and without oral argument. *See* CivLR 7.1(d)(1). For the reasons set forth below, the motion is granted in part and denied in part with leave to amend.

## I. ALLEGATIONS IN THE COMPLAINT

### A. Parties

United Services Automobile Association ("USAA") is a "reciprocal interinsurance exchange" and insurance underwriting company that provides automobile insurance to current and former military members and their families. [Doc. No. 1 ¶ 9.] Specifically, USAA provides automobile insurance policies to commissioned and senior non-commissioned officers in pay grades E-7 or higher. It is also the parent of three other separate insurance companies, each of which insures a different segment of the military or military family members. [*Id.* ¶¶ 10-11.] USAA and these subsidiary insurers operate under common management and control, and policyholders are automatically placed in one of the four companies based on their military pay grade or familial relationship. [*Id.*] The only defendants here are: (1) the parent company, USAA; and (2) USAA General Indemnity Company ("GIC"), which insures enlisted people in pay grades E-1 through E-6. [*Id.* ¶ 11.] According to the complaint, however, USAA "consistently holds itself out as a single entity" and does not provide policyholders in the three companies other than USAA with clear notice that they are being insured by a different company. [*Id.* ¶ 37.]

Plaintiffs Eileen-Gayle Coleman and Robert Castro (collectively, "Plaintiffs") are both California citizens who have been insured by GIC since 2015 and 2009, respectively, hold GIC automobile insurance policies with collision coverage, and formerly served in some division of the United States military. [*Id.* ¶¶ 7-8.] Both Plaintiffs qualify as statutory "good drivers" under California law. *See* CAL. INS. CODE § 1861.025. Plaintiffs purport to represent a class of all presently and formerly enlisted people in pay grades E-1 through E-6 who are California citizens and had collision coverage from GIC at any time during the applicable statute of limitations periods. [Doc. No. 1 ¶ 54.] The complaint further delineates an "Enlisted Policyholders Good Driver Subclass" as those within the class who qualified as statutory "good drivers" and were not offered a "Good Driver Discount policy" from USAA. [*Id.* ¶ 55.]

## B. Plaintiffs' Class Allegations

The crux of Plaintiffs' complaint is that of the two defendant insurers, GIC charges policyholders higher base rates for collision coverage than does USAA. [*Id.* ¶ 33.] Because enlisted personnel are automatically placed in GIC based on their military status and pay grade, they are consequently charged higher premiums than officers placed in USAA for the same coverage. [*Id.*]

Plaintiffs first allege that this practice violates California Insurance Code section 1861.16(b), and thereby the Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200 *et seq.*, by denying the subclass of enlisted "good drivers" access to the lowest rates available from the USAA family of insurance companies. The California Insurance Code provides that every person who qualifies as a "good driver"[1] may purchase a "Good Driver Discount policy" from the insurer of their choice that is at least 20 percent less than the rate they would otherwise pay for the same coverage. CAL. INS. CODE § 1861.02. Section 1861.16(b) provides that when multiple insurers operate under common management or control, an agent or representative of any of those insurers must offer (and the insurer must sell) a qualifying "good driver" a "Good Driver Discount policy" from the insurer within the commonly managed group offering the lowest rates for that coverage.[2] CAL. INS. CODE § 1861.16(b). This requirement "applies notwithstanding the underwriting guidelines of any of those insurers or the underwriting guidelines of the common ownership, management, or control group." *Id.* Plaintiffs claim that Defendants' practice of insuring enlisted people solely through GIC violates section 1861.16(b) because it

---

[1] California Insurance Code section 1861.025 sets forth the criteria for qualification to purchase a "Good Driver Discount policy" from an insurer. *See* CAL. INS. CODE § 1861.025.

[2] Insurers operating under common management or control are not required to sell "Good Driver Discount policies" issued by other insurers within the common ownership group if the Insurance Commissioner determines that the insurers satisfy eight conditions set forth in section 1861.16(c) of the California Insurance Code. Neither party disputes that the Insurance Commissioner has not found that USAA and its affiliates have met section 1861.16(c)'s requirements for exemption from section 1861.16(b). [Doc. No. 1 ¶¶ 30-31.]

results in enlisted "good drivers" not being offered the lowest rates available within USAA's family of insurers for their collision coverage. [Doc. No. 1 ¶ 27.]

Second, Plaintiffs allege that Defendants have made "representations that are untrue, deceptive, and misleading" in violation of California's Unfair Insurance Practices Act (UIPA), CAL. INS. CODE § 790.03(b), thereby violating the UCL. [*Id.* ¶¶ 32-39.] When policyholders purchase or renew a USAA automobile insurance policy, Defendants send them a packet of documents that includes a handout entitled "Information Used to Determine Your Premium in California." [*Id.* ¶ 33.] The handout lists twenty-two types of information Defendants allegedly consider when calculating premiums, none of which is a person's military status. [*Id.*] According to Plaintiffs, however, Defendants do in fact consider military status in determining premiums because they place policyholders in different insurance companies based on their military status (i.e., officers are placed in USAA, whereas those in pay grades E-1 through E-6 are placed in GIC) and charge different premiums in each company. [*Id.*] Plaintiffs also allege that in communicating with policyholders and the public, USAA "consistently holds itself out as a single entity that it refers to as 'USAA,'" even though it insures policyholders through several companies. [*Id.* ¶ 37.] Plaintiffs claim Defendants do not notify enlisted policyholders that they are being insured by a company other than USAA, or that they are consequently paying higher rates than USAA policyholders. [*Id.*] Plaintiffs contend that these representations and omissions violate section 790.03(b) because they are false, deceptive, and misleading as to how Defendants determine insurance premiums. [*Id.* ¶ 39.]

Finally, Plaintiffs allege that Defendants discriminate against enlisted people based on their military status in violation of the Unruh Civil Rights Act ("Unruh Act"), CAL. CIV. CODE § 51 *et seq.*, and section 394(a) of California's Military and Veterans Code. [*Id.* ¶¶ 40-45.] Plaintiffs claim that by placing enlisted people in GIC and charging them higher premiums than if they were officers, Defendants "intentionally discriminated against Enlisted Policyholders on the basis of their military status." [*Id.* ¶ 45.] Further, Plaintiffs allege that Defendants have no "legitimate business interest" in insuring officers and

4

enlisted people through different insurers or in charging enlisted people higher rates. [*Id.* ¶¶ 97, 108.]

On February 4, 2021, Plaintiffs, on behalf of themselves and all others similarly situated, filed a class action complaint against Defendants based on the above-described practices. [Doc. No. 1.] The complaint asserts six causes of action under California law for violations of: (1) the UCL's prohibition on unlawful business practices, based on a violation of California Insurance Code section 1861.16(b); (2) the UCL's prohibition on unfair business practices, based on a violation of California Insurance Code section 1861.16(b); (3) the UCL's prohibition on unlawful business practices, based on a violation of California Insurance Code section 790.03(b); (4) the UCL's prohibition on unfair business practices, based on a violation of California Insurance Code section 790.03(b); (5) the Unruh Civil Rights Act; and (6) section 394(a) of the Military and Veterans Code. [*Id.* ¶¶ 70-112.] On April 7, 2021, Defendants moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 8, 9, and 12(b)(6). [Doc. No. 17.] The motion is now fully briefed and ripe for resolution.

## II.     LEGAL STANDARD

The familiar standards on a motion to dismiss apply here. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir.

2010). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted). If a complaint does not survive scrutiny under Rule 12(b)(6), the Court will grant leave to amend unless it determines that no modified claims "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

### III. REQUEST FOR JUDICIAL NOTICE

Under Federal Rule of Evidence 201(b), a court may take judicial notice, either on its own accord or by a party's request, of facts that are not subject to reasonable dispute because they are (1) "generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Courts may also "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (internal quotations and citations omitted).

Defendants request that the Court take judicial notice of Defendants' Exhibits 1 and 2, attached to the Declaration of Kahn Scolnick in support of Defendants' motion to dismiss. [Doc. No. 17-3.] Defendants' Exhibit 1 purports to be excerpts from USAA's public 2019 California Department of Insurance ("DOI") Rate Filing, SERFF Tracking #USAA-131769162, which Defendants note is cited in the complaint at paragraph 34, footnote 7. [Doc. No. 17-2 at 3-18.] Exhibit 2 purports to be excerpts from GIC's public 2017 DOI Rate Filing, SERFF Tracking #USAA-130660642. [*Id.* at 19-37.] Because both exhibits are public records of rate filings made to and approved by the DOI, and therefore not subject to reasonable dispute, the Court **GRANTS** Defendants' request and takes judicial notice of Defendants' Exhibits 1 and 2.

Plaintiffs also request that the Court take judicial notice of two exhibits. [Doc. No. 20-1.] Plaintiffs' Exhibit 1 purports to be additional excerpts from USAA's public 2019 DOI Rate Filing, SERFF Tracking #USAA-131769162. [Doc. No. 20 at 32-42.] The Court takes judicial notice of Plaintiffs' Exhibit 1 for the same reasons stated above. Plaintiffs' Exhibit 2 purports to be a copy of DOI General Counsel and Deputy Commissioner Kenneth Schnoll's August 10, 2018 letter opinion. [*Id.* at 43-47.] Because the DOI General Counsel's opinions are public records and not subject to reasonable dispute, the Court also **GRANTS** Plaintiffs' request and takes judicial notice of Plaintiffs' exhibits as well.

## IV. DISCUSSION

Defendants argue that Plaintiffs' complaint should be dismissed with prejudice for the following reasons: (1) California Insurance Code section 1860.1 precludes Plaintiffs from challenging Defendants' DOI-approved rates through civil litigation; (2) Plaintiffs' claims seeking equitable relief fail because they have not pleaded that legal remedies are inadequate; (3) Plaintiffs fail to state a claim under the UCL based on a violation of California Insurance Code section 1861.16(b); (4) Plaintiffs fail to plead their third and fourth claims sounding in fraud with particularity as required by Federal Rule of Civil Procedure 9(b); (5) Plaintiffs cannot base their UCL claims on a violation of California Insurance Code section 790.03; and (6) Plaintiffs fail to state claims under the Unruh Act and section 394(a) of the Military and Veterans Code. [Doc. No. 17-1.] The Court addresses each of these arguments in turn.

### A. California Insurance Code § 1860.1 Does Not Bar Plaintiffs from Pursuing This Action

Section 1860.1 of the California Insurance Code states that "[n]o act done . . . pursuant to the authority conferred by this chapter shall constitute a violation of or grounds for prosecution or civil proceedings under any other law of this State heretofore or hereafter enacted which does not specifically refer to insurance." Section 1860.1 has been construed to preclude civil litigation challenging acts done pursuant to the DOI's ratemaking

authority, including claims challenging the reasonableness of rates approved by the DOI. *See MacKay v. Superior Court*, 115 Cal. Rptr. 3d 893, 905-06 (2010) ("Insurance Code section 1860.1 exempts from other California laws acts done and actions taken pursuant to the ratemaking authority conferred by the ratemaking chapter, including the charging of a preapproved rate."). Such claims may only be pursued through specific administrative remedies provided in the Insurance Code. *See id.* at 896. However, section 1860.1's limitation "does not extend to insurer conduct *not* taken pursuant to [the DOI's ratemaking] authority." *Id.* at 911 (emphasis in original). Thus, where a plaintiff's claim does not challenge an approved rate or the DOI's ratemaking authority, but rather challenges some other conduct, section 1860.1 does not prevent the plaintiff from bringing their claim in court under a different theory. *See Krumme v. Mercury Ins. Co.*, 20 Cal. Rptr. 3d 485, 494 (2004) ("A claim predicated on a violation of the Insurance Code not related to ratemaking may thus be framed as a claim under the UCL.") (internal citations omitted).

Defendants contend that section 1860.1 bars this entire action because Plaintiffs' claims challenge Defendants' DOI-approved rates and the underlying Placement Rules informing those rates. [Doc. No. 17-1 at 16.] However, Plaintiffs do not challenge the validity or reasonableness of Defendants' rates, nor do they challenge the DOI's rulemaking authority in approving those rates. Instead, Plaintiffs challenge Defendants' alleged conduct of (1) failing to offer "good driver" class members the lowest rates available from USAA's four insurance companies, (2) falsely representing that they do not consider military status in calculating premiums, and (3) discriminating against class members based on their military status. Plaintiffs allege that Defendants' conduct results in class members being offered policies with higher DOI-approved rates than those offered to officer policyholders. None of these claims relate to whether the rates charged by each defendant insurer are themselves reasonable. Therefore, section 1860.1 does not bar Plaintiffs from litigating their claims in this forum. *See King v. Nat'l Gen. Ins. Co.*, 129 F. Supp. 3d 925, 935 (N.D. Cal. 2015) ("Plaintiffs challenge Defendants' alleged wrongful application of the approved rates, i.e., the conduct and practices that result in Plaintiffs

8

being offered a policy with a higher DOI-approved rate when they should have been offered a policy with a lower DOI-approved rate. Thus, neither Section 1860.1 nor the filed rate doctrine precludes Plaintiffs from litigating their claims in this court.").

## B. Plaintiffs Are Entitled to Pursue Equitable Relief

Second, Defendants argue that Plaintiffs' UCL claims should be dismissed because Plaintiffs have failed to establish their entitlement to equitable relief under the UCL. California courts have long recognized that "the UCL provides only for equitable remedies." *Hodge v. Super. Ct.*, 51 Cal. Rptr. 3d 519, 523 (2006); *see also Nationwide Biweekly Admin., Inc. v. Super. Ct.*, 9 Cal. 5th 279 (2020) (concluding that the "causes of action established by the UCL" are "equitable in nature"). Because damages cannot be recovered, remedies sought under the UCL are "generally limited to injunctive relief and restitution." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1135, 1143 (2003) (internal citations omitted). However, to secure equitable restitution for past harm under the UCL, a plaintiff must first establish that she lacks an adequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *see also Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009) (finding that equitable relief is "not appropriate where an adequate remedy exists at law").

In their four UCL claims, Plaintiffs seek equitable restitution of the amount they overpaid for insurance premiums as a result of Defendants' alleged violations of the California Insurance Code.[3] [Doc. No. 1 ¶ 73.] Defendants argue that these claims "necessarily fail" because Plaintiffs have not explained how legal damages would be

---

[3] In their second and fourth claims brought under the UCL's "unfair" prong, Plaintiffs seek restitution and "disgorgement of all profits relating to the above-described unfair business acts or practices." [Doc. No. 1 ¶¶ 81, 90.] However, nonrestitutionary disgorgement of profits is not available as a remedy under the UCL. *See In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, No. 20-cv-03131-JSC, 2021 WL 1176645, at *8 (N.D. Cal. Mar. 29, 2021) (citing *Korea Supply Co.*, 29 Cal. 4th at 1148 ("Under the UCL, an individual may recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest.")). Thus, while Plaintiffs' UCL claims are not subject to dismissal, Plaintiffs are advised that any potential recovery under the UCL is limited to equitable restitution and injunctive and declaratory relief as may be appropriate.

9

inadequate to remedy any alleged harm. [Doc. No. 17-1 at 31-32.] Nevertheless, the Court finds that Plaintiffs have sufficiently established that they are entitled to seek equitable restitution under the UCL.

While the Insurance Code sections at issue here do not create a private right of action, courts have recognized that plaintiffs may bring other claims predicated on violations of the Insurance Code, such as UCL claims. *See King v. Nat'l Gen. Ins. Co.*, 186 F. Supp. 3d 1062, 1068 (N.D. Cal. 2016) (acknowledging that UCL, breach of contract, and unjust enrichment claims predicated on alleged violations of the Insurance Code are "not precluded as falling within the Insurance Commissioner's exclusive jurisdiction"). In this case, Plaintiffs bring four UCL claims based on violations of the Insurance Code. [Doc. No. 1 ¶¶ 70-90.] Because these claims arise under the UCL, only equitable remedies are available on Plaintiffs' theory that Defendants violated California insurance law. *See Elgindy v. AGA Serv. Co.*, No. 20-cv-06304-JST, 2021 WL 1176535, at *15 (N.D. Cal. Mar. 29, 2021) (finding that plaintiffs were entitled to pursue equitable relief for UCL claims based on underlying violations of California insurance statutes and regulations). As Plaintiffs are precluded from seeking legal damages, they lack an adequate remedy at law for Defendants' alleged violations of the Insurance Code. Plaintiffs are thus entitled to pursue equitable restitution.

Further, Plaintiffs' claims for equitable relief under the UCL are rooted in a different theory than Plaintiffs' legal claims under the Unruh Act and the Military and Veterans Code. The UCL claims are based on allegations that Defendants violated the California Insurance Code. The discrimination claims, on the other hand, are based on allegations that Defendants intentionally discriminated against class members. Moreover, on their discrimination claims, Plaintiffs seek actual damages incurred as a result of the

discrimination,[4] as distinct from the restitution they seek for overpayment as a result of Defendants' Insurance Code violations. While the monetary value of such relief may ultimately be the same, the relevant inquiry is whether the equitable claims rely upon the same theory as the legal claims, which the Court finds they do not. *See In re JUUL Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 639 (N.D. Cal. 2020) (suggesting that plaintiffs could pursue equitable UCL claims if the claims' underlying allegations were not "otherwise coextensive with plaintiffs' legal claims"). Accordingly, Plaintiffs are entitled to seek equitable remedies on their UCL claims, and the Court declines to dismiss Plaintiffs' claims on this basis.

### C. Plaintiffs' UCL Claims Based on a Violation of California Insurance Code § 1861.16(b)

Plaintiffs' first and second causes of action allege that Defendants' conduct violates section 1861.16(b) of the California Insurance Code, thereby violating the UCL's prohibition on unlawful and unfair business practices, respectively.[5] [Doc. No. 1 ¶¶ 70-81.] Defendants argue that Plaintiffs fail to state claims under the UCL based on a violation of section 1861.16(b) because (1) Defendants' "longstanding practices of limiting insurance offerings to some (but not all) of those engaged in military service" are authorized by section 11628(f)(1) of the Insurance Code, and (2) the Insurance Commissioner "specifically approved" Defendants' rates, thereby approving Defendants'

---

[4] Under the Unruh Act, Plaintiffs seek "three times actual damages or $4,000, whichever is greater, together with injunctive and declaratory relief" and attorneys' fees and costs. [Doc. No. 1 ¶ 101.] Under the Military and Veterans Code, Plaintiffs seek "actual damages, together with injunctive and declaratory relief" and attorneys' fees and costs. [*Id.* ¶ 112.]

[5] The UCL prohibits "unfair competition," which it defines to include "any unlawful, unfair or fraudulent business act or practices." CAL. BUS. & PROF. CODE § 17200. By proscribing any "unlawful" business practice, the statute effectively "borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Cel-Tech Commc'ns., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal citations omitted). In addition, the UCL may penalize a practice as "unfair" or "fraudulent" even if that practice is otherwise lawful. *Id.*

11

Placement Rules that place policyholders in different insurance companies based on their military status. [Doc. No. 17-1 at 21.]

Section 11628(f)(1) provides that nothing in the Insurance Code "shall prohibit an insurer from limiting the issuance or renewal of insurance . . . to persons who engage in, or have formerly engaged in, governmental or military service or segments of categories thereof, and their spouse, dependents, direct descendants, and former dependents or spouses." CAL. INS. CODE § 11628(f)(1). Defendants claim that this provision explicitly authorizes their practice of limiting insurance offerings to particular segments of the military. [Doc. No. 17-1 at 22.] Plaintiffs counter that Defendants misconstrue section 11628(f)(1) to put it in direct conflict with section 1861.16(b), and that there is no indication in section 11628(f)(1) that it provides an exemption to section 1861.16(b)'s mandate. [Doc. No. 20 at 15, 17.]

The Court agrees with Plaintiffs. While section 11628(f)(1) may authorize[6] limiting the issuance of insurance to military members of a particular status or pay grade, nothing in the provision indicates that an insurer adopting such a practice need not comply with section 1861.16(b). Nor does section 1861.16(b) prohibit an insurer from owning or operating different insurance companies covering different policyholders. Rather, section 1861.16(b) requires an insurer that owns or operates multiple insurance companies to offer and sell to qualifying policyholders a "Good Driver Discount policy" from their commonly owned or operated company offering the lowest rates for that coverage. CAL. INS. CODE § 1861.16(b). The Court finds no compelling reason why the two Insurance Code provisions at issue cannot be harmonized. *See Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130,

---

[6] Plaintiffs argue that the "most natural reading of 'segments' (or 'categories') is not, in the context of military personnel, a reference to the difference between officers and enlisted personnel," but that it more plausibly refers to "the different branches of the armed services (Army, Air Force, Navy, Marines, Coast Guard, and National Guard)." [Doc. No. 20 at 15.] The parties have not pointed to, and the Court has not located through its own research, legal precedent interpreting the statutory meaning of section 11628(f)(1). Nevertheless, even if Defendants' reading of section 11628(f)(1) is correct, the Court does not find that that provision would impact Defendants' liability under section 1861.16(b).

1151 (2020) (noting that in interpreting a statute, courts must "harmonize" the language of a statutory provision "with related provisions by interpreting them in a consistent fashion").

Nor is the Court persuaded by Defendants' argument that they are not liable because the Commissioner specifically approved Defendants' Placement Rules, including their practice of offering USAA policyholders lower rates than class members. In USAA's 2019 DOI Rate Filing attached by Defendants as Exhibit 1, the Insurance Commissioner's comments state: "If any portion of the application or related documentation conflicts with California law, that portion is specifically not approved." [Doc. No. 17-2 at 7.] Taking Plaintiffs' allegations in the complaint as true, this statement indicates that USAA's Placement Rules are "specifically not approved" by the Commissioner because they violate the California Insurance Code. The comments further state that "[t]his approval does not constitute an approval of underwriting guidelines," which include USAA's Placement Rules. [*Id.*] These statements from the Commissioner directly refute Defendants' contention that the DOI "specifically approved" the Placement Rules. [Doc. No. 17-1 at 9.] Moreover, section 1861.16(b) states that it applies "notwithstanding the underwriting guidelines of any of those [commonly owned or operated] insurers or the underwriting guidelines of the common ownership, management, or control group." CAL. INS. CODE § 1861.16(b). Regardless of what Defendants' Placement Rules authorize or whether the Insurance Commissioner approved them, Defendants have not established that they are entitled to bypass the requirements of section 1861.16(b).

Therefore, the complaint states a claim under the UCL based on Defendants' alleged violation of section 1861.16(b).

### D. Plaintiffs Satisfy Rule 9(b)'s Pleading Requirements

Defendants next argue that because Plaintiffs' third and fourth claims sound in fraud, they are required under Federal Rule of Civil Procedure 9(b) to plead them with particularity, and that Plaintiffs failed to meet these heightened pleading requirements. [Doc. No. 17-1 at 23-24.]

13

21-cv-217-CAB-LL

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard on a party alleging fraud, requiring that the party "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "In other words, a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)). The Ninth Circuit has repeatedly recognized that Rule 9(b)'s particularity requirement applies to claims made in federal court under the UCL. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *see also Davidson*, 889 F.3d at 964 (holding that because the plaintiff's CLRA, FAL, and UCL causes of action were "all grounded in fraud, the FAC must satisfy the traditional plausibility standard of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b)."). Even if fraud is not an essential element of a claim, allegations of fraudulent conduct must still satisfy the heightened pleading requirements of Rule 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).

Plaintiffs' allegations are grounded in fraud, and thus must comply with Rule 9(b)'s heightened pleading requirements. Plaintiffs have met this obligation. Plaintiffs identify several representations and omissions by Defendants that they allege to be material and deceptive: (1) USAA advertises as if it operates through a single entity; (2) Defendants conceal that GIC's base rates for collision coverage are substantially higher than USAA's rates for identical coverage; and (3) Defendants represent that they consider twenty-two types of information in determining premiums, without revealing that they also consider military status. [Doc. No. 1 ¶¶ 33-37.] Plaintiffs allege that these representations and omissions occur in the packet of documents Defendants send to policyholders when they buy or renew an insurance policy. [*Id.*] Finally, Plaintiffs claim that these representations and omissions are deceptive because Plaintiffs were not notified of their placement in a different insurance company based on their military status, thereby causing them to "pay substantially more for USAA auto insurance than they were legally obligated to pay." [*Id.*

¶ 52.] Both Plaintiffs also claim that they would have purchased the less expensive USAA "Good Driver Discount policy" had it been offered to them. [*Id.* ¶¶ 48, 51.]

The Court finds that Plaintiffs "state with particularity the circumstances constituting fraud or mistake," and thus have met Rule 9(b)'s heightened pleading standard. FED. R. CIV. P. 9(b). The Court therefore denies Defendants' motion to dismiss Plaintiffs' third and fourth causes of action on this basis.

### E. Plaintiffs' UCL Claims Based on a Violation of California Insurance Code § 790.03(b)

Plaintiffs' third and fourth causes of action allege that Defendants' conduct violates section 790.03(b) of the California Insurance Code, thereby violating the UCL's prohibition on unlawful and unfair business practices, respectively. [Doc. No. 1 ¶¶ 82-90.] Section 790.03(b), also referred to as the UIPA, prohibits "unfair methods of competition and unfair and deceptive acts or practices in the business of insurance." CAL. INS. CODE § 790.03(b). The UIPA defines such unfair acts or practices to include:

> [m]aking or disseminating or causing to be made or disseminated before the public in this state . . . any statement containing any assertion, representation, or statement with respect to the business of insurance or with respect to any person in the conduct of his or her insurance business, which is untrue, deceptive, or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue, deceptive, or misleading.

*Id.* Defendants assert that Plaintiffs' third and fourth claims should be dismissed for failure to state a claim because both UCL claims are "based on" an alleged violation of the UIPA, which has been deemed inadequate to state a UCL claim by the California Supreme Court. [Doc. No. 17-1 at 23.]

In *Zhang v. Superior Court*, 57 Cal. 4th 364, 384 (2013), the California Supreme Court recognized that "[w]hen the Legislature enacted the UIPA, it contemplated only administrative enforcement by the Insurance Commissioner." Thus, the *Zhang* court held that "[p]rivate UIPA actions are absolutely barred; a litigant may not rely on the proscriptions of section 790.03 as the basis for a UCL claim." *Id.* However, the court noted an exception to this principle, finding that "when insurers engage in conduct that

violates both the UIPA and obligations imposed by other statutes or the common law, a UCL action may lie." *Id.* (internal citations omitted). For example, the *Zhang* court held that the plaintiff's causes of action for false advertising and bad faith insurance practices both "provide grounds for a UCL claim independent from the UIPA." *Id.* at 369. Similarly, in *Diaz v. First Am. Home Buyers Prot. Corp.*, 541 Fed. Appx. 773, 775 (9th Cir. 2013), the Ninth Circuit held that a plaintiff adequately alleged UCL violations when her claims were "premised on fraud," even if the defendant's alleged conduct "may have also violated the [UIPA]."

The Court finds that Plaintiffs' third and fourth causes of action brought under the UCL are premised on an alleged violation of the UIPA and thus are "absolutely barred" under *Zhang*. While their factual allegations may support a UCL claim based on fraudulent conduct (as discussed above), false advertising, and/or bad faith insurance practices[7]— which would be sufficient independent grounds to fall within *Zhang*'s exception— Plaintiffs have not actually asserted such a claim. Rather, Plaintiffs expressly state that their third and fourth UCL claims are "based on [a] violation of § 790.03(b)" of the UIPA. [Doc. No. 1 at 31.] Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' third and fourth causes of action with leave to amend to assert UCL claims based on underlying violations of "obligations imposed by other statutes or the common law." *Zhang*, 57 Cal. 4th at 384.

---

[7] Plaintiffs allege that Defendants knowingly conceal and misrepresent their true policies regarding insurance premiums, thereby deceiving their policyholders, which could sustain a UCL claim under *Zhang*. *See Aerojet Rocketdyne, Inc. v. Global Aerospace, Inc.*, No. 2:17-cv-01515, 2020 WL 3893395, at *8 (E.D. Cal. July 10, 2020) (finding that "[i]n the insurance context, failure to operate in good faith is an unlawful practice," and that the plaintiff stated a valid UCL claim based on bad faith insurance practices by alleging that the defendant avoided its obligations under its own policies "at the expense of" its policyholders).

## F. Plaintiffs' Discrimination Claims Under the Unruh Act and the Military and Veterans Code § 394(a)

Finally, Plaintiffs' fifth and sixth causes of action allege that Defendants violated the Unruh Act and section 394(a) of the California Military and Veterans Code by discriminating against Plaintiffs and class members based on their military status. [Doc. No. 1 ¶¶ 91-112.] Specifically, Plaintiffs claim Defendants discriminated against the class by charging them more for collision coverage than they charged officer policyholders for the same coverage. [*Id.* ¶ 106.] Plaintiffs allege that Defendants injured class members by "consigning them to a position or status within [USAA's] commonly controlled family of insurance companies that was inferior to the position or status they would have occupied if they had been officers." [*Id.* ¶ 107.]

Section 394(a) of the Military and Veterans Code provides that "[n]o member of the military forces shall be prejudiced or injured by any person, employer, or officer or agent of any corporation, company, or firm with respect to that member's employment, position or status." CAL. MIL. & VET. CODE § 394(a). According to the complaint, Defendants place class members in GIC (rather than in USAA or another insurance company) based on their military status as enlisted personnel in pay grades E-1 through E-6. [Doc. No. 1 ¶ 11.] As a result, class members end up paying higher rates for collision coverage than they would if they were officers and/or insured through USAA. [*Id.* ¶ 45.] Plaintiffs, as "member[s] of the military forces," have adequately alleged that they were injured by Defendants with respect to their status within the military as enlisted personnel. [*Id.* ¶ 40].

Although Defendants argue that section 394(a) only applies to the employment context, their argument is not supported by the plain language of the statute. "The interpretation of a statutory provision must begin with the plain meaning of its language." *United States v. Flores*, 729 F.3d 910, 914 (9th Cir. 2013). Section 394(a) encompasses discrimination by employers, as well as discrimination by "any person . . . or officer or agent of any corporation, company, or firm." CAL. MIL. & VET. CODE § 394(a). The statute prohibits discrimination "with respect to that member's employment," but also with respect

to that member's "position or status." *Id.* If section 394(a) only applied to employers and the employment context, there would be no need to include additional language describing its application beyond "employer" or "with respect to that member's employment." *See Kirbyson v. Tesoro Ref. & Mktg. Co.*, No. 09-3990 SC, 2010 WL 761054, at *5 (N.D. Cal. Mar. 2, 2010) ("The unique language of subsection 394(a) clearly expands the application of the subsection beyond the employment context."). Based on the plain meaning of the language in section 394(a), Defendants' alleged conduct falls within the scope of section 394(a)'s proscription against discrimination based on military status. *See CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 706 (9th Cir. 2017) ("If the language has a plain meaning or is unambiguous, the statutory interpretation inquiry ends there.").

In their fifth cause of action, Plaintiffs claim that Defendants also violated the Unruh Act by the above-described conduct.[8] The Unruh Act provides that all persons are "free and equal," and are entitled to "full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." CAL. CIV. CODE § 51(b). The Act explicitly lists fourteen different types of prohibited discrimination, but "this list is illustrative rather than restrictive, and the Act's protection against discrimination is not confined to these enumerated classes." *Javorsky v. W. Athletic Clubs, Inc.*, 195 Cal. Rptr. 3d 706, 712 (2015) (citing *Marina Point, Ltd. v. Wolfson*, 30 Cal.3d 721, 736 (1982)). Plaintiffs allege that Defendants are "business establishments" within the meaning of the Unruh Act, and that discrimination on the basis of military status is prohibited by the Act. [Doc. No. 1 ¶¶ 92-94.] Plaintiffs further allege that because

---

[8] There is no question that Plaintiffs may pursue relief under the Unruh Act for the same alleged discriminatory conduct on which they base their Military and Veterans Code claim. Section 394(h) of the Military and Veterans Code states that the "remedies provided for in this section are not intended to be exclusive but are in addition to the remedies provided for in other laws, including Sections 51 and 52 of the Civil Code [the Unruh Act]." CAL. MIL. & VET. CODE § 394(h). Further, section 1861.03(a) of the Insurance Code makes the Unruh Act applicable to the business of insurance. CAL. INS. CODE § 1861.03(a) ("The business of insurance shall be subject to the laws of California applicable to any other business, including, but not limited to, civil rights laws (Sections 51 to 53, inclusive, of the Civil Code).").

Defendants write insurance for enlisted people through GIC "at significantly higher rates than [it] charges officers" insured by USAA, Defendants knowingly and intentionally deny Plaintiffs full and equal insurance services. [*Id.* ¶¶ 94-98.] These allegations of Defendants' intentional discrimination against class members on the basis of their military status are sufficiently plausible to adequately state a claim under the Unruh Act.

Accordingly, the Court rejects Defendants' challenges to Plaintiffs' fifth and sixth causes of action and finds that Plaintiffs have adequately stated a claim as to both under Rule 12(b)(6).

## V. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED in part and DENIED in part**. Plaintiffs' third and fourth UCL claims premised solely on section 790.03 of the UIPA are **DISMISSED without prejudice**. Should Plaintiffs wish to amend their complaint, they must do so on or before **July 12, 2021**. If no amended complaint is filed by this date, this case will continue on Plaintiffs' remaining claims and Defendants must answer the complaint by **July 26, 2021**.

It is **SO ORDERED**.

Dated: June 22, 2021

Hon. Cathy Ann Bencivengo
United States District Judge