**CONSUMER WATCHDOG**
Harvey Rosenfield (SBN: 123082)
Harvey@ConsumerWatchdog.org
Benjamin Powell (SBN: 311624)
Ben@ConsumerWatchdog.org
6330 South San Vincente Blvd.,
Suite 250
Los Angeles, CA 90048
Tel: (310) 392-0522

**MEHRI & SKALET, PLLC**
Cyrus Mehri *(Pro Hac Vice)*
CMehri@findjustice.com
Michael Lieder *(Pro Hac Vice)*
MLieder@findjustice.com
Jane Kim (SBN: 333342)
JKim@findjustice.com
2000 K Street NW, Suite 325
Washington, D.C. 20006
Tel: (202) 822-5100

**MASON LLP**
Gary Mason *(Pro Hac Vice)*
GMason@MasonLLP.com
Danielle Perry (SBN: 292120)
DPerry@MasonLLP.com
Theodore Bell *(Pro Hac* Vice)
TBell@MasonLLP.com
5335 Wisconsin Avenue NW, Suite 640
Washington, D.C. 20015
Tel: (202) 429-2290

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EILEEN-GAYLE COLEMAN, and ROBERT CASTRO, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>UNITED SERVICES AUTOMBILE ASSOCIATION and USAA GENERAL INDEMNITY COMPANY,<br><br>            Defendants. | Case No. 3:21-cv-00217-RSH(KSC)<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing:<br>Date:           October 15, 2024<br>Courtroom:  3B<br>Judge:          Hon. Robert S. Huie |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 2

    The Parties ..................................................................................................... 2

    Auto Insurance Rates in California ............................................................... 4

    Good Driver Discounts .................................................................................. 5

LEGAL STANDARD ............................................................................................... 6

ARGUMENT ............................................................................................................ 7

    I.  Summary or declaratory judgment should be entered, ruling that USAA's Placement Rules violate Section 1861.16(b). ............................. 7

    II.  Summary judgment should be entered that USAA's suggested methodology to create a hypothetical risk pool combining GIC and United Services insureds is inconsistent with Section 1861.16(b). ............. 9

CONCLUSION ....................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Dempsey v. Mkt. St. Ry. Co.*,
   23 Cal. 2d 110, 142 P.2d 929 (1943)..................................................................10

*Donabedian v. Mercury Ins. Co.*
   116 Cal. App. 4th 968 (2004) .............................................................................1

*Eli Lilly & Co. v. Viking Corp.*,
   No. 1:03-CV-1674-JDT-TAB, 2005 WL 4921429 (S.D. Ind. Feb. 7, 2005) ...........................................................................................................10

*Farmers Ins. Exchange v. Superior Court*,
   2 Cal. 4th 377 (1992) ..........................................................................................1

*Gutierrez v. City of Woodland*,
   No. CIV. S-10-1142 LKK, 2012 WL 1640509 (E.D. Cal. May 9, 2012) ..................................................................................................................7

*Nosirrah Mgmt., LLC v. Franklin Wireless Corp.*,
   No.: 21-CV-1316-RSH-JLB, 2023 U.S. Dist. LEXIS 41746 (S.D. Cal. Jan. 11, 2023) .................................................................................................7

*Rivera v. Hillard*,
   89 Cal. App. 5th 964, 306 Cal. Rptr. 3d 493 (2023), *review denied* (June 28, 2023)..................................................................................................10

*Rodman v. Safeway, Inc.*,
   125 F. Supp.3d 922 (N.D. Cal. 2015) ............................................................. 6, 10

*Stem, Inc. v. Scottsdale Ins. Co.*,
   No. 20-cv-02950-CRB, 2021 WL 3271265 (July 20, 2021) ............................. 10

*United States v. Nishiee*,
   996 F.3d 1013 (9th Cir. 2021) ............................................................................ 8

**Statutes**

Cal. Ins. Code § 1861.02(b)(2) ................................................................................ 1

Cal. Ins. Code § 1861.16(b) ........................................................................... *passim*

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ........................ 1

**Rules**

Fed. R. Civ. P. 56(a) .................................................................................... 6, 7, 10

# INTRODUCTION

California law requires insurers to offer a 20% discount to all drivers who meet the statutory definition of a "good driver," and it requires any group of insurers under common ownership or operating under common management or control to offer that discount to good drivers from the group's lowest-priced affiliate. Cal. Ins. Code §§ 1861.02(b)(2), 1861.16(b).

Here, the undisputed facts show that Defendants United Services Automobile Association ("United Services") and USAA General Indemnity Company ("GIC"; together "USAA")) are insurers both under common ownership and under common management or control. The undisputed facts also show that USAA maintains "Placement Rules," which it follows, putting some statutory good-driver policyholders into GIC and some into United Services based solely on their military pay grade—without regard to which of those affiliates "offers the lowest rates" for good-driver coverage. Cal. Ins. Code § 1861.16(b). As a result, USAA's Placement Rules violate § 1861.16(b) on its face. This violation of the Insurance Code also constitutes an "unlawful" business practice, in violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*.[1]

Plaintiffs Elaine-Gayle Coleman and Robert Castro move for partial summary judgment on behalf of the certified class, which comprises:

---

[1] . *See, e.g., Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 393-94 (1992) (both rejecting insurer's argument that the CDI has "exclusive jurisdiction" over alleged violations of Proposition 103 and ruling that violations of Proposition 103, of which § 1861 is a part, can be brought as UCL actions, as recognized by Sections 1861.03(a) and 1861.10(a), which specifically authorize "'alternative' or 'cumulative' administrative and civil remedies"); *Donabedian v. Mercury Ins. Co*. 116 Cal. App. 4th 968, 977, 990-91 (2004) (holding that "Proposition 103's purpose and the plain meaning rule compel the conclusion that plaintiff may litigate his claim [challenging insurer's alleged overcharges] under the UCL.").

1

> All enlisted persons who (a) at any time on or after December 28, 2017, **purchased or renewed** an automobile insurance policy including collision coverage **from GIC**, (b) **qualified as good drivers** under Cal. Ins. Code § 1861.025 according to USAA's records, (c) **were not offered a good driver discount from United Services**, (d) **paid more** for that policy than they would have paid in United Services, and (e) at any time in which clauses (a) through (d) have been satisfied, garaged vehicles in the State of California.

ECF No. 133 (12-22-23 Order) at 58 (emphases added).

The Class seeks summary judgment on two issues:

> (1) The Class asks for a declaratory or summary judgment on a question of law—that USAA's Placement Rules violate § 1861.16(b); and
>
> (2) The Class also asks for a ruling, again as matter of law, that recalculating base rates and relativities based on a combined risk pool of GIC's and United Services' policyholders in order to identify injured GIC policyholders or estimate the amount of their restitution conflicts with Section 1861.16(b). "Section 1861.16(b) does not require GIC and United Services to combine their insureds into one risk pool."

ECF No. 133 (12-22-23 Order) at 53. Plaintiffs' proposed damages model is consistent with Section 1861.16(b). Defendants' is not.

Summary judgment on these two issues would streamline the next steps in this case, thereby focusing any trial mainly on the sufficiency of the class-wide proof of loss based on Plaintiffs' experts' sampling methodology.

## BACKGROUND

**The Parties**

USAA has four affiliated insurance companies that provide auto insurance to members of the military and their families. ECF No. 122-3 (Wechsler Decl.), ¶ 9.

2

Two of those companies, United Services and GIC, are defendants in this case. ECF No. 49 (Am. Com.), ¶¶ 11, 12.

United Services is the parent company of GIC. ECF No. 50 (Answer), ¶ 9 (admitting that "United Services owns 100% of the common stock of [...] USAA-GIC."); ECF No. 16 (Not. of Party with Fin. Int.) (admitting that GIC is a wholly-owned subsidiary of United Services). In short, they have "common ownership." Cal. Ins. Code § 1861.16(b). But United Services and GIC are not just commonly owned. They also operate under "common management or control." *Id.* "[T]here's not a separate management structure for GIC than there is for [United Services]." Ex. A (Wechsler Tr.) 145:20-146:10.[2] One person, Keith Wechsler, has "overall responsibility for USAA's auto insurance business in California." ECF No. 122-3 (Wechsler Decl.), ¶ 6. Similarly, Quinn Saner heads USAA's auto insurance pricing for both United Services and GIC in California. ECF No. 122-2 (Saner Decl.), ¶ 7. And further illustrating common management and control, the two companies do not submit their own rate filings, class plans, ECF No. 122-2 (Ex. A to Saner Decl.), at 52-293, rules manual, *id.* at 294-337, or placement rules, ECF No. 122-3 (Ex. A to Wechsler Decl.), at 20-22. Rather, USAA submits those on behalf of both companies.

The class claims in this case that USAA violates § 1861.16(b), on its face, by using USAA's California Auto Company of Placement Rules ("Placement Rules") to automatically assign class members to GIC for good-driver auto policies without regard to whether United Services "offers the lowest rates" for that coverage.

In USAA's parlance, its Placement Rules are "mutually exclusive," meaning that, under those Rules, its policyholders are eligible for insurance from one and only one affiliate. Without exception, for every USAA policyholder, the Placement Rules

---

[2] References to "Ex." are to exhibits to the declaration of Michael Lieder.

3

dictate placement with GIC or with United Services of another affiliate. ECF No. 122-3 (Wechsler Decl.), ¶¶ 12-15. Current and former military personnel whose highest pay grade is, or was, E-7 or higher are always sold policies issued by United Services, while enlisted personnel whose highest pay grade is, or was, E-6 or lower are always sold GIC policies. *Id.*, ¶¶ 14-15. USAA pays no attention to which company "offers the lowest rates," as § 1861.16(b) requires when the insured is a good driver. And because of its Placement Rules, USAA sold Plaintiffs Coleman and Castro, and all other class members – all of whom qualified for good driver discounts – auto insurance through GIC rather than United Services. Ex. D (Coleman Tr.), 22:20-23:12; Ex. E (Castro Tr.), 15:4-10.

The class period in this case runs from December 28, 2017 to the present. Both Plaintiffs first purchased coverage with GIC on or before December 28, 2017. Coleman subsequently cancelled her insurance in September 2021. Ex. B, Coleman Tr. 58:17-59:21; ECF No. 122-1, at 110. Castro still insures his vehicles in California through GIC. Castro Decl., ¶¶ 2-3.

**Auto Insurance Rates in California**

Auto insurance premiums in California are calculated in two steps. California insurers start the calculation with the "base rate" applicable to each coverage a policyholder selects. ECF No. 122-2 (Saner Decl.), ¶¶ 8, 10. Throughout the class period, GIC and United Services have offered the same coverages in California, but GIC's base rates have uniformly been higher than United Services' base rates. ECF No. 119-1 (Griglack 10-17-22 Rept.), ¶ 15; ECF No. 122-2 (Saner Decl.), ¶ 16.

Next, California insurers adjust their base rates to reflect a policyholder's risk characteristics, using "rating factors." These rating factors take into account, for example, annual mileage and years of driving experience. ECF No. 122-2 (Saner Decl.), ¶¶ 8, 18. Rating factors, in turn, have categories and "relativities." For example, both GIC and United Services divide the rating factor for driving experience into 73 categories of risk, ranging from 0 years of driving experience to

72+ years of driving experience. ECF No. 122-2 (Saner Decl.), ¶ 28; Ex. A to Saner Decl. at 225-26, 229-30. Within those categories, drivers are also assigned relativities. Drivers considered of average risk based on years of driving experience are assigned a relativity (essentially a coefficient) of 1.0. Drivers considered to be riskier because of their years of driving experience are assigned a relativity greater than 1. Drivers posing lower than average risk are assigned a relativity less than 1. ECF No. 122-2 (Saner Decl.), ¶¶ 26-32. Every policyholder is assigned a relativity for every rating factor, after which those relativities are multiplied by GIC's or United Services' "base rates" (depending which company the policyholder has been placed with). This process is repeated for each coverage for each covered vehicle. ECF No. 119-1 (Griglack 10-17-22 Rept.), ¶ 20. To that dollar figure, USAA adds an expense fee. And then it applies a good driver discount, if applicable. *Id.*, ¶¶ 21, 27. Finally, the resulting totals for each covered vehicle are summed to yield a dollar figure for a policy for the covered drivers and vehicles. *Id.*, ¶ 21. The end result is the policy premium.

The common management and control here is so pervasive that for all California drivers, throughout the class period, United Services and GIC have used the same rating factors and categories. ECF No. 119-1 (Griglack 10-17-22 Rept.), ¶ 18. They also have used identical relativities for over 75% of the rating factors. *Id.*, ¶ 19; ECF No. 122-2 (Saner Decl.), ¶ 33.

**Good Driver Discounts**

Throughout the class period, both GIC and United Services have offered a 20% discount (a relativity of .8) to qualifying "good drivers." ECF No. 122-2 (Ex. A to Saner Decl.), at 194, 210. But policyholders may not get the best price because they are offered that discount *only "in the company that they are eligible for [under USAA's Placement Rules],"* which may not be, as Section 1861.16(b) states, the USAA company "which offers the lowest rates for that coverage." Ex. A (Wechsler Tr.), 13:14-14:22; *see also id.* at 21:2-5. For every class member here, that has meant

5

a policy with GIC— without regard to whether the premium for a good driver policy would be lower with United Services. As an example, USAA sold both Plaintiffs GIC good driver discount policies, not United Services policies, ECF No. 49 (Am. Com.), ¶¶ 6–7; ECF No. 50 (Answer), ¶¶ 6-7, and they paid more for those GIC policies than they would have paid for identical coverage with United Services. ECF No. 122-1 at 107 (Watkins 12-2-22 Rebut. Rept.); *id.* at 195 (Strombom 12-2-22 Rebut. Rept.); Ex. B, USAA's 2-14-22 Supp. Resp. to Pls' First Set of Interrogatories.

According to Plaintiffs' experts, 197,180 GIC policyholders meet the class definition—meaning that USAA sold them good driver discount policies from GIC and they paid higher premiums for those policies than they would have paid for the same coverage at United Services' rates. ECF No. 119-3 (Schwartz 10-17-22 Rept.), ¶ 14. USAA's experts have offered neither a rival number nor a rival estimate, and they concede that GIC's "rates and relativities when applied to the same set of rating factors will on average generate higher premiums" than United Services' rates and relativities. Ex. C (Strombom Tr.), 32:5-33:21. And from among the 197,180 class members, USAA's experts have not identified any who paid less with GIC than they would have paid for the same coverage with United Services. Ex. F, 11-30-23 Hearing Tr. 17:11-18:10.[3]

## LEGAL STANDARD

Where "there is no genuine dispute as to any material fact" and the movant "is entitled to judgment as a matter of law," summary judgment is required. Fed. R. Civ. P. 56(a). And "[d]isputes over irrelevant or unnecessary facts will not preclude

---

[3]  *See Rodman v. Safeway, Inc.*, 125 F. Supp.3d 922 (N.D. Cal. 2015) (noting that defendant's "speculation" that some class members may not have been injured "does not create a genuine dispute for trial").

6

a grant of summary judgment." *Nosirrah Mgmt., LLC v. Franklin Wireless Corp.*, No.: 21-CV-1316-RSH-JLB, 2023 U.S. Dist. LEXIS 41746, at *4-5 (S.D. Cal. Jan. 11, 2023) (citations omitted). Similarly, "metaphysical doubt as to the material facts" does not suffice to defeat summary judgment. *Id.* (citations omitted).

Motions for partial summary judgment are permissible. Rule 56 was amended in 2010 to explicitly authorize motions for summary judgment not only on any claim or defense but also on a "part of each claim or defense." Fed. R. Civ. P. 56(a). Partial summary judgment can be surgical: in the interest of streamlining later proceedings, a "part" of a claim includes "particular issues or elements of a claim." *Gutierrez v. City of Woodland*, No. CIV. S-10-1142 LKK, 2012 WL 1640509, at *2 n.25 (E.D. Cal. May 9, 2012) (quoting MOORE'S FEDERAL PRACTICE 3d, § 56.122[2] at 56–309).

## ARGUMENT

**I.    Summary or declaratory judgment should be entered, ruling that USAA's Placement Rules violate Section 1861.16(b).**

Section 1861.16(b) requires an insurance group like USAA to sell discounted policies— *from its lowest-price affiliate—* to drivers who meet the statutory definition of "good drivers." That section states, in relevant part:

> An agent or representative representing one or more insurers having common ownership or operating in California under common management or control shall offer, and the insurer shall sell, a good driver discount policy to a good driver from an insurer within that common ownership, management, or control group, ***which offers the lowest rates for that coverage***. This requirement applies notwithstanding the underwriting guidelines of any of those insurers or the underwriting guidelines of the common ownership, management, or control group.

Cal. Ins. Code § 1861.16(b) (emphasis added).

Here, there are no material disputed facts as to USAA's violation of this Code section. By placing class members with GIC without regard to whether United Services offers the lowest rates for good driver discount policy coverage, USAA is

7

violating § 1861.16 on its face. USAA's violation of that section is shown here by the following undisputed facts:

**First**, the undisputed facts show that GIC and United Services share common ownership *and* operate under common management or control. Because United Services owns 100% of the stock of GIC, common ownership is self-evident. And common management or control has been admitted by USAA's witness on the subject: "[ T]here's not a separate management structure for GIC than there is for [United Services]." Ex. A (Wechsler Tr.) 145:20-146:10. In addition, one person, Keith Wechsler, has "overall responsibility for USAA's auto insurance business in California," including for "the rates and relativities" of United Services and GIC "in California, and the resulting premiums charged to policyholders in each company." ECF No. 122-3 (Wechsler Decl.), ¶ 6. Another person, Quinn Saner, heads USAA's auto insurance pricing for both United Services and GIC in California. ECF No. 122-2 (Saner Decl.), ¶ 7. And neither company submits its own rate filings, class plans, ECF No. 122-2 (Ex. A to Saner Decl.), at 52-293, rules manual, *id.* at 294-337, or placement rules, ECF No. 122-3 (Ex. A to Wechsler Decl.), at 20-22. Rather, USAA submits those on behalf of both companies.[4]

**Second,** it is also undisputed—USAA's experts concede it—that GIC's "rates and relativities when applied to the same set of rating factors will on average generate higher premiums" than United Services' rates and relativities. Ex. C (Strombom Tr.) 32:5-33:21.

**Third,** it is undisputed that, despite higher premiums in United Services, USAA automatically places all policyholders only "in the company that they are

---

[4] It would suffice for purposes of Section 1861.16(b) if the companies were *either* commonly owned *or* commonly managed. The requirement under Section 1861.16(b) is disjunctive. *United States v. Nishiee*, 996 F.3d 1013, 1023 (9th Cir. 2021) ("[T]he disjunctive 'or' … indicates alternatives") (cleaned up).

8

eligible for [under USAA's Placement Rules]." For all class members, this means placement in GIC because their military pay grade was not high enough to qualify for United Services, even if United Services offers the lowest priced good driver policies for their coverage. Ex. A (Wechsler Tr.), 13:14-14:22; *see also id*. at 21:2-5.

On the basis of these undisputed facts, the class is entitled to a summary or declaratory judgment that USAA's Placement Rules violate § 1861.16(b).

## II. Summary judgment should be entered that USAA's suggested methodology to create a hypothetical risk pool combining GIC and United Services insureds is inconsistent with Section 1861.16(b).

The language of Section 1861.16(b) is plain and direct: USAA "shall sell" good driver discount policies to good drivers from its affiliate "which *offers* the lowest rates for that coverage." "Offers the lowest rates" is in the present tense; it does not say "would offer if the group combined all good drivers into a single risk pool." The comparison is between actual, contemporaneous rates, not hypothetical rates in an imaginary, counterfactual, but-for world, as USAA contends. ECF No. 123 (Opp. to Class Cert.), at 21-24. The statute refers to the lowest rates *offer[ed]*, not some rates that have never been offered and have never existed.

Section 1861.16 is a straight-forward common-sense statute designed to provide good drivers in California the lowest rates offered with any group of affiliated insurance companies. It beggars belief to think that the California State Legislature would have enacted a statute requiring abstruse math and counterfactual, but-for-world calculations that one of USAA's experts says would involve "thousands of calculations and assumptions" just to figure out what the "lowest rate" is. ECF No. 122-1, at 19, ¶ 38 (Watkins 6-1-22 Decl.). No insurance group could have multiple affiliates offering good driver policies if every time a good driver sought to purchase or renew a policy the group was required to make "thousands of calculations and assumptions." *See Dempsey v. Mkt. St. Ry. Co.,* 23 Cal. 2d 110, 113, 142 P.2d 929, 930 (1943) ("we should not foster a statutory construction which

9

would inaugurate new and complicated procedural steps when there is another construction which is reasonable and achieves the purpose of the statute"); *Rivera v. Hillard*, 89 Cal. App. 5th 964, 978, 306 Cal. Rptr. 3d 493, 508 (2023), *review denied* (June 28, 2023) ("we endeavor to avoid constructions that would lead to unreasonable, impractical or arbitrary results").

Therefore, as a matter of law, the class is entitled to partial summary judgment that the correct measure of damages is the difference between GIC rates and United Services rates, not hypothetical United Services rates calculable only after hypothesizing one combined risk pool including both GIC and United Services insureds. Measuring damages for a violation of Section 1861.16(b) "does not require GIC and United Services to combine their insureds into one risk pool." ECF No. 133 (12-22-23 Order) at 53. Partial summary judgment is appropriate to define the proper measure of damages. *See Rodman v. Safeway, Inc.*, 125 F. Supp. 3d 922 (N.D. Cal. 2015) (granting motion for summary judgment on issue of the appropriate measure of damages, stating that defendant's "proposed damages model does not square with the facts of the case" and noting that defendant's "speculation" that some class members may not have been injured "does not create a genuine dispute for trial"); *Stem, Inc. v. Scottsdale Ins. Co.*, No. 20-cv-02950-CRB, 2021 WL 3271265 (July 20, 2021) (granting motion for partial summary judgment regarding the proper measure of damages, as distinct from the amount of damages); *Eli Lilly & Co. v. Viking Corp.*, No. 1:03-CV-1674-JDT-TAB, 2005 WL 4921429, at *3 (S.D. Ind. Feb. 7, 2005) ("In keeping with Rule 56's goal of expediting litigation …, the appropriate measure of damages can be addressed through ... motions for partial summary judgment").

## CONCLUSION

For the reasons stated above, the Class asks for partial summary judgment on two points: (1) declaring that USAA's Placement Rules, which require placing class members with GIC without considering if United Services rates for their good driver

coverage would be lower, violates the California Insurance Code, §1861.16(b); and (2) ruling that the correct measure of damages, based on § 1861.16(b), is the difference between GIC rates and rates United Services "offers," not hypothetical United Services rates calculable only after hypothesizing one combined risk pool including both GIC and United Services insureds.

Dated: July 31, 2024

                              CONSUMER WATCHDOG; MEHRI & SKALET, PLLC; MASON LLP

                              By: /s/ *Michael D. Lieder*
                                         Michael D. Lieder

*One of the Attorneys for the Class*

11

## CERTIFICATION

I, Michael Lieder, am the ECF user whose identification and password are being used to file this document. In compliance with the Electronic Case Filing Administrative Policies and Procedures § 2(f)(4), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: July 31, 2024                              /s/ *Michael D. Lieder*
                                                          Michael D. Lieder