1
2
3
4
5
6
7

GIBSON, DUNN & CRUTCHER LLP
KAHN A. SCOLNICK, SBN 228686
  kscolnick@gibsondunn.com
DANIEL R. ADLER, SBN 306924
  dadler@gibsondunn.com
JAMES A. TSOUVALAS, SBN 325397
  jtsouvalas@gibsondunn.com
ROARK LUSKIN, SBN 341761
  rluskin@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

8
9
10

*Attorneys for Defendants*
*United Services Automobile Association and*
*USAA General Indemnity Company*

11
12
13

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

14
15
16
17
18
19
20
21
22
23

| | |
|---|---|
| EILEEN-GAYLE COLEMAN and ROBERT CASTRO, on behalf of themselves and all others similarly situated,<br><br>                   Plaintiffs,<br><br>        v.<br><br>UNITED SERVICES AUTOMOBILE ASSOCIATION and USAA GENERAL INDEMNITY COMPANY,<br><br>                   Defendants. | CASE NO. 3:21-cv-00217-RSH-KSC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Hearing**:<br>Date:           October 15, 2024<br>Courtroom:   3B<br>Judge:          Hon. Robert S. Huie<br>Action Filed:  February 4, 2021<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

24
25
26
27
28

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 15, 2024, or as soon thereafter as the matter may be heard, in Courtroom 3B, located at 333 West Broadway, San Diego, CA 92101, Defendants United Services Automobile Association and USAA General Indemnity Company (collectively, "USAA" or "Defendants") will and hereby do move under Federal Rule of Civil Procedure 56 for an order granting summary judgment in their favor, on the ground that there are no genuine issues of material fact as to the remaining claims asserted in Plaintiffs' amended complaint (Dkt. No. 49), and that they are entitled to judgment in their favor as a matter of law.

As detailed in the accompanying memorandum of points and authorities, Plaintiffs' and the certified class's remaining claims are barred by the filed-rate doctrine (codified in Insurance Code section 1860.1), and even if they weren't barred, Plaintiffs and the class challenge a lawful and fair business practice. At the very least, Defendant United Services Automobile Association is entitled to partial summary judgment on Plaintiffs' and the class's request for restitution because they never gave any money or property to that company.

This motion is based on this notice of motion and the accompanying memorandum of points and authorities, the concurrently filed declarations of Keith Wechsler and Quinn Saner, the concurrently filed request for judicial notice ("RJN"), the pleadings and papers on file in this action, any argument in connection with the motion, and anything else of which this Court may take judicial notice.

DATED: July 31, 2024                    Respectfully submitted,

                                        GIBSON, DUNN & CRUTCHER LLP


                                        By:____/s/ Kahn Scolnick_____
                                                   Kahn Scolnick

                                        *Attorney for Defendants United Services*
                                        *Automobile Association and USAA General*
                                        *Indemnity Company*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.    BACKGROUND .................................................................................. 3

    A.    USAA gradually expands its offerings ........................................ 3

    B.    Insurance rates in California have long been subject to a rigorous
           approval process. ........................................................................ 4

    C.    The Department approved United Services' and GIC's respective
           rates and rate structure, each premised on those companies' unique
           eligibility criteria. ...................................................................... 6

    D.    Of Plaintiffs' six claims, four have been dismissed, and one has
           been certified for class treatment. .............................................. 8

III.    LEGAL STANDARD ......................................................................... 8

IV.    ARGUMENT ...................................................................................... 9

    A.    Section 1860.1 bars Plaintiffs' remaining claims ..................... 10

        1.    Overview of the filed-rate doctrine and section 1860.1. ............. 10

        2.    Section 1860.1 precludes Plaintiffs' claims. ................................ 11

    B.    USAA did not engage in an unlawful or unfair business practice. ........ 18

    C.    At a minimum, partial summary judgment should be entered in
           favor of United Services on Plaintiffs' and the class's restitution
           request. ...................................................................................... 25

V.    CONCLUSION ................................................................................. 25

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*20th Century Ins. Co. v. Garamendi,*
5      8 Cal. 4th 216 (1994) ............................................................... 25

6

*Alaei v. Gov. Emps. Ins. Co.,*
7      2021 WL 1165067 (S.D. Cal. March 25, 2021) ....................... 16

8

*Americopters, LLC v. F.A.A.,*
9      441 F.3d 726 (9th Cir. 2006) .................................................. 17

10

*Anderson v. Liberty Lobby, Inc.,*
11      477 U.S. 242 (1986) .................................................................. 9

12

*In re Anthem, Inc. Data Breach Litig.,*
13      2016 WL 3029783 (N.D. Cal. May 27, 2016) .......................... 15

*Askins v. U.S. Dep't of Homeland Sec.,*
14      899 F.3d 1035 (9th Cir. 2018) ................................................ 17

15

*Bhan v. NME Hosps., Inc.,*
16      929 F.2d 1404 (9th Cir. 1991) .................................................. 9

17

*Breiding v. Eversource Energy,*
18      939 F.3d 47 (1st Cir. 2019) ..................................................... 12

19

*Cnty. of Stanislaus v. PG&E,*
20      114 F.3d 858 (9th Cir. 1997) ........................................ 2, 10, 12

21

*Donabedian v. Mercury Ins. Co.,*
22      116 Cal. App. 4th 968 (2004) ............................... 4, 12, 13, 14

23

*Epstein v. USAA Gen. Indem. Co.,*
24      636 F. Supp. 3d 1260 (W.D. Wash. 2022) .............................. 16

25

*Excelsior Coll. v. Bd. of Registered Nursing,*
26      136 Cal. App. 4th 618 (2006) ................................................. 23

27

*H.J. Inc. v. Nw. Bell. Tel. Co.,*
28      954 F.2d 485 (8th Cir. 1992) .................................................. 15

*Haddock v. Countrywide Bank, NA*,
   2015 WL 9257316 (C.D. Cal. Oct. 27, 2015) ......................................................... 16

*In re Hawaiian & Guamanian Cabotage Antitrust Litig.*,
   647 F. Supp. 2d 1250 (W.D. Wash. 2009) ............................................................ 15

*Hong v. Bank of Am., NA*,
   2022 WL 2235469 (9th Cir. June 22, 2022).......................................................... 16

*Ixchel Pharma, LLC v. Biogen, Inc.*,
   9 Cal. 5th 1130 (2020) ......................................................................................... 24

*King v. Nat'l Gen. Ins. Co.*,
   129 F. Supp. 3d 925 (N.D. Cal. 2015).......................................................... 14, 17

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ....................................................................................... 25

*Cal. ex. rel. Lockyer v. Mirant Corp.*,
   266 F. Supp. 2d 1046 (N.D. Cal. 2003) ................................................................. 9

*People ex rel. Lungren v. Superior Court*,
   14 Cal. 4th 294 (1996) ......................................................................................... 25

*MacKay v. Superior Court*,
   188 Cal. App. 4th 1427 (2010) .......................................2, 4, 9, 10, 11, 12, 13, 14, 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)............................................................................................... 9

*McGreevey v. PHH Mortg. Corp.*,
   897 F.3d 1037 (9th Cir. 2018) ............................................................................ 17

*Mercury Ins. Co. v. Lara*,
   35 Cal. App. 5th 82 (2019) ................................................................................... 6

*Nolan v. City of Anaheim*,
   33 Cal. 4th 335 (2004) .................................................................................... 21, 23

*People v. Lashon*,
   98 Cal. App. 5th 804 (2024) ............................................................................... 18

*Rocha v. AMCO Ins. Co.*,
   2023 WL 9319246 (C.D. Cal. Sept. 12, 2023) ................................................... 15

ii

*Seviour-Iloff v. LaPaille*,
    80 Cal. App. 5th 427 (2022) ...................................................................... 19

*Smith v. Rickard*,
    205 Cal. App. 3d 1354 (1988) ................................................................. 19

*Spanish Speaking Citizens' Found., Inc. v. Low*,
    85 Cal. App. 4th 1179 (2000) .................................................................... 5

*State Farm Mut. Auto. Ins. Co. v. Garamendi*,
    32 Cal. 4th 1029 (2004) ............................................................................ 6

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
    809 F.2d 626 (9th Cir. 1987) .................................................................... 9

*Thai v. Richmond City Center, LP*,
    86 Cal. App. 5th 282 (2022) .................................................................... 24

*United States v. Gonzales*,
    520 U.S. 1 (1997)..................................................................................... 24

*Walker v. Allstate Indem. Co.*,
    77 Cal. App. 4th 750 (2000) ...................................................... 11, 13, 14

*Wilson v. Fair Emp. & Hous. Comm'n*,
    46 Cal. App. 4th 1213 (1996) .................................................................. 11

**Statutes**

Bus. & Profs. Code §§ 17200, et seq. ............................................................ 8

Ins. Code § 1858.07 ................................................................................. 4, 25

Ins. Code § 1860.1 .........................................2, 9, 10, 11, 12, 13, 14, 15, 16

Ins. Code § 1861.2(a) ..................................................................................... 4

Ins. Code § 1861.05(a) ................................................................................. 11

Ins. Code § 1861.16(b) ................................3, 7, 8, 9, 10, 14, 17, 18, 19, 20, 21, 23, 24

Ins. Code § 11628(f)(1) ...................................3, 7, 10, 19, 20, 21, 22, 23, 24

iii

**Regulations**

10 Cal. Code Regs. § 2643.3(a) ........................................................................ 5

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................ 8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

USAA insures those who have served in the military and their eligible family members.  It offers auto insurance in California through four companies, each of which serves a different segment of the military.  Plaintiffs and the class are policyholders of Defendant USAA General Indemnity Company ("GIC"), which generally insures lower-ranking military personnel as determined by pay grade.  Plaintiffs contend they should have been insured by a *different* USAA company—Defendant United Services Automobile Association ("United Services"), which generally insures higher-ranking military personnel as determined by pay grade.  Plaintiffs concede that because of their lower pay grade, they are ineligible for United Services; they are eligible only for GIC. Yet because Plaintiffs meet the statutory "good driver" qualifications (along with roughly 70% of all GIC policyholders), Plaintiffs insist they can use this lawsuit to force United Services to bypass its eligibility rules and to insure them.

Plaintiffs' theory calls for a radical reorganization of both GIC and United Services, which would upend California's prior-approval scheme for insurance. Neither Defendant can sell insurance in California unless the California Department of Insurance ("the Department") has reviewed and approved its rates in advance.  In doing so, the Department considers many factors, most notably the specific pool of policyholders eligible for each company and their unique history of losses.  The riskier the pool of policyholders, the higher the rates.  By setting each company's rates to reflect its policyholders' historical losses—the best predictor of future losses—the Department makes sure that each insurer will collect enough premium to pay the claims of its policyholders without going out of business.

Plaintiffs are suing GIC for charging them the exact rates the Department authorized GIC to charge them.  They are also suing United Services for declining to insure Plaintiffs and many others who are not eligible for United Services.  There is no genuine dispute as to the following facts:

1      • GIC and United Services have mutually exclusive eligibility requirements;

2      • Plaintiffs and the class are eligible for GIC and ineligible for United Services;

3      • The Department relies on GIC's and United Services' respective eligibility
4        requirements when setting each company's rates; and

5      • The Department-approved rates for each company are calibrated to the different
6        risks posed by each company's unique pool of policyholders.

7    Given this undisputed record, there are three independent reasons why Defendants are
8    entitled to summary judgment (in whole or in part).

9         ***First***, the filed-rate doctrine (codified in Insurance Code section 1860.1) bars
10   Plaintiffs' claims. It "provides that rates duly adopted by a regulatory agency are not
11   subject to collateral attack in court," and it precludes liability "for charging a rate that
12   has been approved by" the Department. *MacKay v. Superior Court*, 188 Cal. App. 4th
13   1427, 1448-49 (2010). Here, although Plaintiffs contend they would have paid lower
14   rates if they had been insured by United Services instead of GIC, an insurer "cannot
15   charge a rate unless the rate is part of a rate plan which has been approved in advance"
16   by the Department. *Id.* at 1431. And the Department did not authorize United
17   Services to charge its rates to Plaintiffs or the class members; those rates were
18   approved only for policyholders who met United Services' eligibility requirements.

19        Plaintiffs have tried to avoid the filed-rate doctrine by arguing they are merely
20   challenging their placement in GIC instead of United Services—not the rates
21   themselves. This is a distinction without a difference. The Department-approved rates
22   for GIC and United Services were calculated and set for a specific group of
23   policyholders. Forcing United Services to change (or ignore) its eligibility criteria to
24   include Plaintiffs and other GIC-eligible policyholders would necessitate a complete
25   re-do of both companies' filed rates. However Plaintiffs style their claim, they are
26   barred "from recovering damages measured by comparing the filed rate and the rate
27   that might have been approved absent the conduct in issue"—which is precisely what
28   Plaintiffs are seeking. *Cnty. of Stanislaus v. PG&E*, 114 F.3d 858, 863 (9th Cir. 1997).

2

*Second*, even if Plaintiffs were allowed to attack Defendants' rate framework in court, they are challenging a *lawful* business practice. Plaintiffs rely on California's good-driver statute, section 1861.16(b) of the Insurance Code, as the basis for their theory. Yet Plaintiffs' novel reading of that statute is explicitly foreclosed by a different section of the Code, section 11628(f)(1), which authorizes United Services to apply its eligibility rules precisely as it has been doing—that is, by declining to insure anyone outside the "segments of" the military that its eligibility rules allow it to serve. By definition, Plaintiffs and other GIC-eligible policyholders are not part of that segment, regardless of whether they are statutory "good drivers." The plain language of section 11628(f)(1), its legislative history, and the Department's longstanding practices foreclose Plaintiffs' efforts to force United Services to issue policies to individuals outside the "segments of" the military it is authorized to serve.

*Third*, at a minimum, this Court should grant partial summary judgment for United Services on Plaintiffs' request for restitution. Plaintiffs claim United Services violated the good-driver statute by failing to insure them and other GIC-eligible policyholders, but that is at best a claim for injunctive relief. Plaintiffs and the class cannot obtain restitution from United Services because it is undisputed that United Services is not in possession of their money or property. In other words, Plaintiffs and the class never paid United Services *anything*, so there is nothing for United Services to return to them in the form of restitution.

## II.    BACKGROUND

### A.    USAA gradually expands its offerings.

USAA was formed in 1922 by 25 Army officers who could not obtain auto insurance and decided to insure each other. Decl. of Keith Wechsler ¶ 10. For 60 years, it remained a single company insuring only military officers. Over time, it expanded its offerings to serve more members of the military, including enlisted personnel, as well as veterans and dependents of members of the military. *Id.*

Since 2009, USAA has offered insurance through four entities, each of which

3

"insures members from different segments of the military" "and their families." Dkt. No. 133 at 2.  Two of those companies are Defendants United Services and GIC.

The eligibility criteria for each USAA company are mutually exclusive; military members and their family members are eligible to purchase policies from only one of the USAA entities.  Wechsler Decl. ¶¶ 20, 42.  USAA describes the specific eligibility criteria for the four companies in its Placement Rules (the "Placement Rules"), which have been revised periodically over the years.  Dkt. No. 122-3 at 19.  As relevant here, the Placement Rules dictate that United Services generally insures higher-ranking personnel (those in pay grades E-7 and higher), and GIC generally insures lower-ranking officers and enlisted personnel (those in pay grades E-6 and lower).  *See* Dkt. No. 133 at 4; Wechsler Decl. ¶ 17.

## B.    Insurance rates in California have long been subject to a rigorous approval process.

Since 1989, insurance companies in California—including the four USAA insurers—have had to secure "prior approval" from the Department for the rates they charge policyholders.  The Department's prior-approval rate-setting process is highly technical and data-driven; each step of it "requires the Commissioner to exercise his technical expertise."  *Donabedian v. Mercury Ins. Co.*, 116 Cal. App. 4th 968, 992 (2004).  All told, the process is designed to ensure "that the ultimate rate filed with the Department is not excessive, inadequate or unfairly discriminatory."  *Id.*  And insurers "are statutorily prohibited from charging a rate which has not been preapproved by the [Department]."  *MacKay*, 188 Cal. App. 4th at 1435 n.6; *see* Ins. Code § 1858.07 (civil penalty for insurer charging rates other than those approved for it by the Department).

The heart of the Department's rate-setting process is the requirement that each insurer set its rates based on its particular loss history—the amount it has historically paid out to its policyholders to settle claims.  This is because insurance rates and premiums must bear "a substantial relationship to the risk of loss."  Ins. Code § 1861.2(a).  Calibration of rates to account for past losses is the only way to ensure

1   the company can pay future claims while also turning the modest profit the Department

2   allows. *See* Dkt. No. 133 at 32-33; Dkt. No. 122-1 at 12-17; 10 Cal. Code Regs.

3   § 2643.3(a).

4           As detailed in this Court's class certification order (Dkt. No. 133 at 2-4),

5   *Spanish Speaking Citizens' Found., Inc. v. Low*, 85 Cal. App. 4th 1179, 1186-92

6   (2000), and the expert declaration of Nancy Watkins (Dkt. No. 122-1 at 12-18), an

7   insurer applying for rate approval calculates its proposed rates for each particular

8   coverage (*e.g.*, collision coverage) in two steps.  First, the insurer calculates a base

9   rate—the uniform amount each policyholder would have to pay for the insurer to

10  collect enough aggregate premiums to cover everyone's anticipated claims and the

11  insurer's expenses, plus a reasonable profit.  Naturally, to ensure this base rate is

12  actuarially sound, it must be derived (via formulas prescribed by regulation) from the

13  insurer's historical loss data.  For example, the formulas would produce a lower

14  proposed base rate for a less risky pool of insureds (like a pool of married, middle-

15  aged drivers in rural Calaveras County) than it would a riskier pool of insureds (like a

16  pool of single teenage drivers in Los Angeles County).  Second, and again relying on

17  its specific policyholder data, the insurer must develop a system of rating factors and

18  relativities to be applied to each individual policyholder, adjusting the base rate (up or

19  down) for that policyholder's specific risk profile.  The result will be that riskier-than-

20  average policyholder (*e.g.*, one with five speeding tickets) pays a higher premium than

21  a less-risky-than-average policyholder (*e.g.*, one who has never been pulled over).

22          After completing this data-driven process, each insurer submits a rate filing and

23  class plan to the Department with its proposed base rates, rating factors, and relativities

24  for its unique pool of policyholders, along with the extensive historical loss data

25  supporting those figures.  *See* Dkt. No. 133 at 4; Dkt. No. 122-1 at 12-17.  Once the

26  Department is satisfied, it approves the unique rates, rating factors, and relativities for

27  that insurer to charge its insureds.  *See* Dkt. No. 133 at 4.

28

**C.** **The Department approved United Services' and GIC's respective rates and rate structure, each premised on those companies' unique eligibility criteria.**

Under the inherently insurer-specific nature of California's prior-approval process, each USAA insurer, including United Services and GIC, must submit its own rate application with its own proposed base rates and class plan, supported by its own unique loss data. Dkt. No. 133 at 4; Wechsler Decl. ¶ 20. So United Services and GIC have separately applied for and received approval for all the base rates, rating factors, relativities, and good-driver discounts they have used to calculate premiums for their respective pools of California drivers. *Id.* ¶¶ 20, 43-45.

Given the distinct eligibility and the different historical loss data of United Services and GIC, the Department has approved different base rates and relativities for each insurer to charge to its respective policyholders. Because the average GIC policyholder has a history of greater losses than the average United Services policyholder, the Department has generally required GIC to charge higher base rates than United Services (to cover GIC's higher anticipated losses). Dkt. No. 133 at 33; Wechsler Decl. ¶ 20; Decl. of Quinn Saner ¶ 14. As this Court has recognized, any "discrepancy in premiums" paid by United Services' and GIC's insureds "is a result of each group's corresponding history of losses," and the role those historical losses play in setting each company's base rates. Dkt. No. 133 at 33-34.

The prior approval process is not limited to an insurer's rates and class plan. "It also addresses the underlying factors that may impermissibly affect rates charged by insurers and lead to insurance that is unfair, unavailable, and unaffordable." *Mercury Ins. Co. v. Lara*, 35 Cal. App. 5th 82, 89 (2019). The Commissioner "has the authority . . . to gather any information necessary for determining whether these factors are impermissibly affecting the fairness, availability, and affordability of insurance." *State Farm Mut. Auto. Ins. Co. v. Garamendi*, 32 Cal. 4th 1029, 1042 (2004).

Exercising this broad authority, the Department in 2014 conducted an examination of Defendants' sister company, non-party USAA insurer Garrison

Property and Casualty Insurance Company.  That examination focused on USAA's Placement Rules, its "Good Driver Discount Guidelines," and its compliance with various good-driver statutes—including section 1861.16(b), the statute on which Plaintiffs rely here.  *See* Dkt. No. 122-3 at 23-45.  The examination centered on whether Garrison was charging "excessive, inadequate, or unfairly discriminatory" premiums, and specifically whether Garrison was complying with section "1861.16(b)."  *Id.* at 39.  After concluding its examination, the Department reported:

- USAA includes four companies, including United Services and GIC;
- "[a]ll four companies . . . offer the same coverage options under identical coverage forms";
- United Services "had a lower base rate and [GIC] had a higher base rate";
- "[p]er the *filed and approved rating plans* for the four companies, *eligibility for each company* is based on group membership as follows:  [United Services] insures active military officers and noncommissioned officers while [GIC] insures active military enlisted personnel"; and
- each of the USAA companies offers insurance "to both good drivers and non-good drivers *provided they meet the Company's eligibility guidelines*."

*Id.* at 35, 44 (emphases added).  The Department did not contend that any of the USAA companies were violating section 1861.16(b) by adhering to their Placement Rules and issuing policies (good-driver or otherwise) only to those eligible for each specific company.  And the Department noted that "[u]nder the provisions of [Insurance Code] § 11628(f), insurers are authorized to limit the issuance and renewal of insurance to persons who are or were engaged in military or governmental service, their spouses, dependents, direct descendants, and former dependents or spouses."  *Id.* at 44.

The Department did, however, express concern that USAA didn't always immediately account for changes (*e.g.*, in pay grade) that might entitle a policyholder to be eligible for a different USAA company with lower rates.  Dkt. No. 122-3 at 44. The Department concluded that *this* concern, if unaddressed, could result "in the

1  application of unfairly discriminatory rates." *Id.*  But it did not suggest (and never has)

2  that each USAA insurer's practice of insuring only those eligible under the Placement

3  Rules violated anything in the Insurance Code, including section 1861.16(b).

4      The Department instructed USAA in 2015 to include updated Placement Rules

5  with its rate filings whenever they changed, and to ensure that policyholders are

6  reevaluated at each renewal period to make sure their eligibility does not change.  Dkt.

7  No. 122-3 at 44-45, 46-48.  The USAA insurers have done so ever since, filing their

8  Placement Rules with each rate filing and separately obtaining approval for any

9  changes in those rules; and the Department has continually approved each company's

10  rates and relativities premised on each company's unique pool of insureds as spelled

11  out in the Placement Rules.  *See* Wechsler Decl. ¶ 25.

### D.    Of Plaintiffs' six claims, four have been dismissed, and one has been certified for class treatment.

12
13

14      Plaintiffs filed a six-count complaint against United Services and GIC.

15  Dkt. No. 1.  Judge Bencivengo granted Defendants' motion to dismiss two of those

16  claims.  Dkt. No. 22.  The case was reassigned (Dkt. No. 66), and Plaintiffs moved to

17  certify two classes.  This Court ultimately denied certification as to Plaintiffs' discrimi-

18  nation claims, but certified a class as to Plaintiffs' Unfair Competition Law (Bus. &

19  Prof Code §§ 17200 et seq., or "UCL") theory that Defendants engaged in an "unlaw-

20  ful" business practice by failing to insure GIC-eligible insureds in United Services

21  when those insureds qualify as statutory good drivers.  Dkt. No. 133 at 46.  At this

22  point, the only claims left are the class UCL claim for an "unlawful" business practice

23  and the derivative individual UCL claim asserting an "unfair" practice.  Dkt. No. 140.

## III.    LEGAL STANDARD

24

25      Summary judgment is proper when there is "no genuine issue as to any material

26  fact."  Fed. R. Civ. P. 56(a).  "[T]he mere existence of *some* alleged factual dispute

27  between the parties will not defeat an otherwise properly supported motion for

28  summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  No genuine issue of

material fact exists "[w]here the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio

Corp.*, 475 U.S. 574, 587 (1986).  Where the moving party demonstrates the absence

of genuine issues of material fact, the opposing party "must produce specific evidence,

through affidavits or admissible discovery material, to show that the dispute exists."

*Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).  An inference "may be

drawn in favor of the nonmoving party only if it is 'rational' or 'reasonable' and

otherwise permissible under the governing substantive law."  *T.W. Elec. Serv., Inc. v.

Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

## IV.  ARGUMENT

Defendants are entitled to summary judgment on Plaintiffs' sole remaining class

claim (and derivative individual claim) for three independent reasons.

*First*, the claims are barred by section 1860.1 of the Insurance Code and the

filed-rate doctrine, which preclude policyholders from suing their insurers "for

charging [them] a rate that has been approved by" the Department.  *MacKay*, 188 Cal.

App. 4th at 1449.  There is no dispute that GIC and United Services have different

eligibility criteria and rates, that the Department approved each company's rates based

on their own unique eligibility criteria, and that Plaintiffs and the class are not eligible

to purchase a policy from United Services.  There is also no dispute that GIC charged

Plaintiffs and class members the precise amount of premiums the Department allowed

them to charge.  Yet Plaintiffs still insist, based on a novel reading of Insurance Code

section 1861.16(b), that Defendants were *required* to break the rules by charging

Plaintiffs and the class different rates from a different company (United Services).

Section 1860.1 forecloses this theory because it necessarily "intrude[s] upon [the

Department's] exclusive authority concerning any practice affecting the filed rate."

*Cal. ex. rel. Lockyer v. Mirant Corp.*, 266 F. Supp. 2d 1046, 1062 (N.D. Cal. 2003).

*Second*, the challenged practice is not unlawful or unfair.  By adhering to its

9

Placement Rules and declining to insure individuals who are not eligible for coverage, United Services is acting consistently with the plain text of section 1861.16(b).  And even if it weren't, section 11628(f)(1) makes it perfectly lawful for United Services not to insure those who indisputably fall outside the "segments of" "military service" it is authorized to serve.  The legislative history makes clear that the whole point of section 11628(f)(1) was to prevent attempts to misapply the good-driver statutes to upset United Services' longstanding practice of serving a discrete segment of the military.

*Third*, and at the very least, United Services is entitled to partial summary judgment on Plaintiffs' request for restitution.

### A.    Section 1860.1 bars Plaintiffs' remaining claims.

Plaintiffs insist that GIC, United Services, and the Department have been doing things wrong the whole time.  Based on a novel reading of the Insurance Code, they say that United Services should have been insuring roughly 70% of GIC's policyholders, and they seek restitution of the premium they say they would have saved in that scenario.  But if Plaintiffs get their way, it will topple the Department's exhaustive rate-setting process and the approved rates for United Services and GIC.  Those rates would be rendered completely arbitrary and untethered from the actual risks presented by each company's actual policyholders.  This is exactly the sort of theory that section 1860.1 funnels into the administrative process and out of the courts.

### 1.    Overview of the filed-rate doctrine and section 1860.1.

The filed-rate doctrine "provides that rates duly adopted by a regulatory agency are not subject to collateral attack in court"; it precludes liability "for charging a rate that has been approved by the [insurance] commissioner."  *MacKay*, 188 Cal. App. 4th at 1449.  The doctrine "prohibits a party from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the conduct in issue."  *Stanislaus*, 114 F.3d at 863.  It applies to rates filed with the California Department of Insurance because the Department has broad authority over insurance rates and ensuring they are not "excessive, inadequate, unfairly discriminatory or

1   otherwise in violation of" the law.  Ins. Code § 1861.05(a).

2       California has codified the filed-rate doctrine in section 1860.1 of the Insurance

3   Code, which gives the Department "exclusive original jurisdiction over issues related

4   to ratemaking." *Walker v. Allstate Indem. Co.*, 77 Cal. App. 4th 750, 754, 757 n.4

5   (2000) (filed-rate doctrine is "analogous to the scheme explicitly embodied in

6   [section 1860.1]").  Section 1860.1 exempts "[a]n insurer charging a preapproved rate"

7   from court challenges. *MacKay*, 188 Cal. App. 4th at 1443.  It provides that "[n]o act

8   done, action taken or agreement made pursuant to" the authority conferred by the

9   ratemaking chapter of the Insurance Code "shall constitute a violation of or grounds

10  for prosecution or civil proceedings under any other law of this State heretofore or

11  hereafter enacted which does not specifically refer to insurance."  Ins. Code § 1860.1.

12      California's statutory ratemaking scheme is a "pervasive and self-contained

13  system of administrative procedure" for setting and monitoring insurance rates; it

14  leaves no role for courts in the rate-setting process. *Wilson v. Fair Employment &*

15  *Housing Comm'n*, 46 Cal. App. 4th 1213, 1223 (1996).  The scheme does, however,

16  give policyholders a role, allowing them to intervene in the administrative rate-setting

17  process, "challenge a rate *subsequent* to its approval," and (if dissatisfied with the

18  outcome of the administrative proceeding) appeal the Commissioner's determination in

19  California Superior Court. *MacKay*, 188 Cal. App. 4th at 1441.

20          **2.    Section 1860.1 precludes Plaintiffs' claims.**

21      There can be no genuine dispute that Plaintiffs' claims are improper attacks on

22  Defendants' filed and approved rates.  Section 1860.1 bars these claims.

23      Plaintiffs and class members are GIC policyholders; under USAA's Placement

24  Rules, they are not eligible to purchase insurance from United Services. *See* Wechsler

25  Decl. ¶¶ 17-19.  The parties agree that GIC charged Plaintiffs and the class members

26  the exact amount of premium the Department authorized GIC to charge.  Saner Decl.

27  ¶¶ 16-17.  The Department approved those rates after an exhaustive process, basing

28  them on a comprehensive analysis of GIC policyholders' claims history, among other

factors specific to GIC's insureds.  *See Donabedian*, 116 Cal. App. 4th at 992.

Nonetheless, Plaintiffs insist the rates they paid were too high.  They contend they should have been allowed to bypass United Services' Placement Rules, gotten insurance from United Services, and paid United Services' (lower) rates.  Of course, Plaintiffs could have raised such concerns during the rate-setting process—just as their counsel is doing now by petitioning to intervene in the Department's pending evaluation of USAA's proposed rates.  *See* Wechsler Decl. Exs. H, I, J.  Plaintiffs also cannot dispute that granting the relief they seek would require the Department's involvement and approval, since United Services and GIC would need to change their Placement Rules and their entire rate schemes to account for the movement of tens of thousands of policyholders not presently eligible for United Services.  Wechsler Decl. ¶ 44.  After all, the Department has recognized that "eligibility for each company" is a key component of the "filed and approved rating plans."  Dkt. No. 122-3 at 35, 44.

Plaintiffs' challenge is precisely the kind that the filed-rate doctrine and section 1860.1 preclude.  They seek restitution of the difference between (1) the Department-approved rates they paid to GIC, and (2) the lower rates they believe they would have paid if United Services had violated its Placement Rules by insuring Plaintiffs and charging them a rate intended for an entirely different group of policyholders.  The filed-rate doctrine "prohibits a party from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the conduct in issue." *Stanislaus*, 114 F.3d at 863.  Section 1860.1 similarly bars claims premised on "[a]n insurer charging a preapproved rate."  *MacKay*, 188 Cal. App. 4th at 1443.

Plaintiffs may seek to avoid this conclusion by arguing they challenge only the "application" of United Services' and GIC's approved rates.  The Court should reject that sort of creative framing.  The filed-rate doctrine precludes rates from being "collaterally attacked in the courts," full stop—regardless of how plaintiffs describe their challenge, and regardless of whether their challenge to rates is direct or indirect. *Breiding v. Eversource Energy*, 939 F.3d 47, 52 (1st Cir. 2019).

12

***Plaintiffs are not challenging the "application" of rates.*** Plaintiffs have argued that they are challenging only the *application* of rates, rather than the rates themselves. Courts distinguish (1) the "ratemaking" process—through which an insurer creates, and the Department approves, a menu of potential rates—from (2) the "application" of a rate on that menu to each prospective policyholder. *Donabedian*, 116 Cal. App. 4th at 992–93. A plaintiff cannot challenge the menu itself—the rates are the rates—but it can challenge the insurer's choice among multiple permissible rates on the menu, so long as the Department did not dictate how the insurer was to make that choice. *Id.*

The California Court of Appeal addressed this distinction in *MacKay* in concluding that section 1860.1 applied. The plaintiffs there alleged that two rating criteria an insurer used to determine eligibility for a good-driver discount violated the Insurance Code. *MacKay*, 188 Cal. App. 4th at 1433. The key question was whether the Department had approved those criteria when it set rates. *Id.* at 1436-37. That question, in turn, depended on "the language submitted to the [Department] for approval"—and it was undisputed that the insurer's use of those criteria "was included in the papers that it submitted to the [Department]." *Id.* at 1435-36. That fact was dispositive: the criteria were part and parcel of the rate plan the Department approved, so the challenge to the insurer's reliance on those criteria was necessarily a challenge to a filed rate itself. *Id.* at 1435-37, 1449-50. The eligibility criteria were baked into the rates—if an insured met the criteria, she was eligible for one (and only one) rate, and if she did not meet the criteria, she was eligible for a different rate (and only that rate). *See also Walker*, 77 Cal. App. 4th at 753 ("Once the commissioner's decision" whether to approve a rate is final, "an insurer must charge only the approved rate.").

In contrast, section 1860.1 does not bar challenges to "unapproved underwriting guideline[s]." *MacKay*, 188 Cal. App. at 1450. That is, where the insurer retains discretion over which of two rates to apply because the Department has not approved the criteria for selecting between them, section 1860.1 does not come into play. This was the case in *Donabedian*, where the plaintiff argued that an insurance company

13

considered impermissible criteria in determining who was eligible for the good-driver discount. 116 Cal. App. 4th at 974. The court took as true, at the pleadings stage, the plaintiff's contention that the Commissioner did not approve the insurer's criteria, and it "decline[d] to reach [the insurer's] assertion" to the contrary. *Id.* at 993-94. In other words, the court assumed the Department had approved two sets of rates—one for those who qualified for the good-driver discount, and one for those who did not—and left it to the insurer to decide which specific insureds were eligible for which rates. *Id.* Notably, the court in *MacKay* distinguished *Donabedian* on the ground that "the underlying conduct challenged was not the charging of an approved rate, but the *application* of an unapproved underwriting guideline." *MacKay*, 188 Cal. App. at 1450.

Another court declined to dismiss claims under section 1860.1 where the plaintiffs argued that section 1861.16(b) required the insurer to charge them lower rates. *King v. Nat'l Gen. Ins. Co.*, 129 F. Supp. 3d 925, 936 (N.D. Cal. 2015). There, the plaintiffs alleged that the Department approved two sets of rates that could have applied to them—their claim was that the insurer offered them "a policy with a higher DOI-approved rate when they should have been offered a policy with a lower DOI-approved rate." *Id.* A challenge to the insurer's decision to apply one of two permissible Department-approved rates is consistent with the distinction outlined in *MacKay* and *Donabedian*—that is, between challenges to rates and challenges to their application.

Here, it is undisputed that there was only one Department-approved rate that GIC could have charged Plaintiffs. The Department authorizes GIC to insure military members in pay grades E-1 to E-6, and it authorizes United Services to insure members in pay grades E-7 and above. *See* Wechsler Decl. ¶¶ 17-20. The rates for each company are calibrated to the specific segment of the military that each company serves. Those rates are premised on each company's Placement Rules, and the Placement Rules render Plaintiffs and other class members ineligible for United Services. This means GIC charged Plaintiffs and the class "only the approved rate" they were allowed to charge, which was the GIC rate. *Walker*, 77 Cal. App. 4th at 753.

14

***Section 1860.1 bars Plaintiffs' challenge regardless of whether it is "indirect."***
Plaintiffs may also argue that section 1860.1 do not apply because they are simply contending that Defendants should have insured most of GIC's policyholders in a different company—not that the Department approved the wrong set of rates for either GIC or United Services. But that is an illusory distinction. There is no dispute that Plaintiffs paid to GIC the only rate the Department allowed GIC to charge. Plaintiffs are demanding that the Department should have approved, and Defendants should have charged, different rates for Plaintiffs and tens of thousands of other GIC-eligible policyholders by allowing them to bypass United Services' Placement Rules, which would require a complete redo of both companies' rates. *See* Weschler Decl. ¶¶ 40-45. Regardless of how Plaintiffs style their claims, they seek "tort liability for charging a rate that has been approved by the [Department]." *MacKay*, 188 Cal. App. 4th at 1449.

Plaintiffs may not use "artful pleading [to] circumvent the filed rate doctrine." *In re Hawaiian & Guamanian Cabotage Antitrust Litig.*, 647 F. Supp. 2d 1250, 1265 (W.D. Wash. 2009). Otherwise, they could avoid the doctrine simply by styling their claims as a challenge to some aspect of the rate-setting process, not the rates themselves. Courts correctly see through such artifice, routinely holding that section 1860.1 bars claims where the plaintiffs are *effectively* "contesting the rates," even if they do "not seek to outright change the rates themselves." *Rocha v. AMCO Ins. Co.*, 2023 WL 9319246, at *13 (C.D. Cal. Sept. 12, 2023). That is, section 1860.1 precludes claims that "would '*indirectly* cause the application of rates different from the filed rates.'" *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *24 (N.D. Cal. May 27, 2016). And where a plaintiff seeks damages on the theory that a rate previously approved by a regulatory body is too high, as Plaintiffs do here, that is "necessarily and plainly [a] challenge [to] the rates previously approved." *H.J. Inc. v. Nw. Bell. Tel. Co.*, 954 F.2d 485, 493 (8th Cir. 1992).

Courts frequently apply the filed-rate doctrine even when plaintiffs claim to be challenging something other than the rate itself, as long as the claim would require the

15

court to determine the correctness of the rate charged.  Most notably, in a case that involved the same core theory and substantially similar claims (under Washington law) as those here, asserted against the same defendants, the Western District of Washington recently dismissed all claims because they "[ran] headlong into the filed rate doctrine."  *Epstein v. USAA Gen. Indem. Co.*, 636 F. Supp. 3d 1260, 1264 (W.D. Wash. 2022).  The plaintiffs there (as here) contended that GIC policyholders should have been charged the United Services rates.  *Id.* at 1265.  Even though the plaintiff emphasized he was not challenging the rates as "unreasonable," the court reasoned that the "substance" of the complaint "directly challenge[d] USAA['s] decision to charge different rates" to United Services members and GIC members.  *Id.  Epstein* is no outlier:

- The Ninth Circuit held that the doctrine barred a policyholder's claim that an insurer "engaged in a kickback scheme" that inflated her rate:  she was "challenging the [insurance commissioner's] determination that the rate [was] reasonable," despite her contention that she was challenging a scheme, not the rate per se.  *Hong v. Bank of Am., NA*, 2022 WL 2235469, *1 (9th Cir. June 22, 2022).

- A court in this District rejected a policyholder's argument that he was challenging an insurer's misrepresentation about the nature of the insurance product, not its rates, because the claim would necessarily require a finding that he had "overpaid for his policy" after being charged approved rates.  *Alaei v. Gov. Emps. Ins. Co.*, 2021 WL 1165067, *2, *7-8 (S.D. Cal. March 25, 2021).

- Another court held that the doctrine barred claims that insurers had engaged in a conspiracy to defraud the plaintiffs by setting high prices for policies, reasoning that the challenge amounted to an attack on the insurance premiums.  *Haddock v. Countrywide Bank, NA*, 2015 WL 9257316, *17-*19 (C.D. Cal. Oct. 27, 2015).

***Judge Bencivengo's rulings at the pleadings stage do not resolve the filed-rate arguments at this stage.***  Summary judgment for Defendants would not be in tension with Judge Bencivengo's decision at the pleadings stage to reject Defendants' section 1860.1 arguments.  In that decision, the Court cited the holding in *King* that a plaintiff

16

may allege that an insurer impermissibly offered it "a policy with a higher DOI-approved rate when they should have been offered a policy with a lower DOI-approved rate," and the court then ruled that section 1860.1 did not bar the theory that Defendants "fail[ed] to offer 'good driver' class members the lowest rates available from USAA's four insurance companies." Dkt. No. 22 at 8-9 (citing *King*, 129 F. Supp. 3d at 936). This ruling was of course based only on the pleadings—the Court was unable to consider USAA's mutually exclusive Placement Rules or how they are inextricably intertwined with each company's filed rates. *See Americopters, LLC v. F.A.A*., 441 F.3d 726, 732 n.4 (9th Cir. 2006) (district court ruling on Rule 12(b)(6) motion is "confined by the facts contained in the four corners of the complaint"). The Court also took as true the allegation that "[t]he California Department of Insurance . . . never approved [GIC's] conduct of failing to offer and sell to Enlisted Policyholders with collision coverage who are statutory good drivers a good driver discount policy from the insurer under common control with it that offers such policyholders the lowest rates for good driver coverage." Dkt. No. 49 at 13, ¶ 30; *see McGreevey v. PHH Mortg. Corp*., 897 F.3d 1037, 1040 n.3 (9th Cir. 2018) (facts alleged in complaint are "assumed as true" on Rule 12(b)(6) motion).[1]

　　　　Discovery has established that Plaintiffs' allegations were untrue. In reviewing and approving GIC's and United Services' respective rates, the Department examined each company's mutually exclusive eligibility criteria in the Placement Rules, and the Department approved different rates for each company with the express understanding that GIC members were not eligible for United Services, and vice versa. *See* Wechsler Decl. ¶¶ 20, 27, 41, 45. The Department also conducted an in-depth review of USAA's compliance with various good-driver statutes, including section 1861.16(b). *See* Dkt. No. 122-3 at 23-45. The Department found that United Services "had a lower base rate and [GIC] had a higher base rate"; and that each USAA company offers

---

[1] Regardless, a court is free to "reassess[] its own legal rulings in the same case." *Askins v. U.S. Dep't of Homeland Sec*., 899 F.3d 1035, 1042 (9th Cir. 2018).

17

insurance "to both good drivers and non-good drivers *provided they meet the Company's eligibility guidelines*." *Id.* at 35, 44 (emphasis added). In other words, the Department-approved rates leave United Services with no discretion to insure Plaintiffs or class members, and they leave GIC with no discretion to charge anything other than the specific rates it charged to Plaintiffs and the class. This undisputed record confirms that the reasoning of *King* does not apply here.

### B.    USAA did not engage in an unlawful or unfair business practice.

Separately, Plaintiffs cannot demonstrate that Defendants committed an "unlawful" or "unfair" business practice in violation of the UCL.

Plaintiffs' theory is that it is "unlawful" or "unfair" to insure Plaintiffs and other statutory good drivers in GIC instead of United Services. They contend this practice violates the general requirement in section 1861.16(b) for commonly controlled insurers to offer good-drivers policies from whichever "insurer within that common ownership … offers the lowest rates for that coverage." Ins. Code § 1861.16(b); Dkt. No. 49 at 22-25, ¶¶ 70-81. There are two separate defects in this theory.

*First*, section 1861.16(b) does not require United Services to offer a policy to anyone that is *ineligible for United Services*. This Court applies the "plain language" of section 1861.16(b) and "may not add language to the statute or rewrite it" to broaden its reach. *People v. Lashon*, 98 Cal. App. 5th 804, 812 (2024). Plaintiffs identify no textual basis to force United Services to abandon its Placement Rules to insure Plaintiffs and other GIC policyholders that are ineligible for coverage, just because they are statutory "good drivers." The Department itself has recognized that each USAA company, including United Services, offers insurance "to both good drivers and non-good drivers *provided they meet the Company's eligibility guidelines*." Dkt. No. 122-3 at 44 (emphasis added). So where, as here, Plaintiffs are ineligible for United Services, United Services does not have to insure them.

Plaintiffs' only response has been to point to the language in section 1861.16(b) that its "requirement applies notwithstanding the underwriting guidelines of any of

18

those insurers or the underwriting guidelines of the common ownership, management, or control group."  Dkt. No. 49 at 6, 8, ¶¶ 10, 11, 18.  This gets Plaintiffs nowhere. USAA's Placement Rules—which specify who is eligible to be insured in each company—are *not* underwriting guidelines.  Wechsler Decl. ¶¶ 15-16.  Underwriting guidelines serve completely different purposes from Placement Rules.  *Id.*  USAA has separate underwriting guidelines that are filed with the Department *in addition to* its Placement Rules.  *Id.*  "It is an elementary rule of construction that the expression of one excludes the other," and that "the court is without power to supply an omission." *Seviour-Iloff v. LaPaille*, 80 Cal. App. 5th 427, 451 (2022).  So the fact that section 1861.16(b) "applies notwithstanding" an insurer's underwriting guidelines means it *does not apply* in a way that would force a company to violate its eligibility rules.  *See Smith v. Rickard*, 205 Cal. App. 3d 1354, 1360 (1988) ("if a statute specifies one exception to a general rule, other exceptions or effects are excluded").

At the pleadings stage, Judge Bencivengo accepted Plaintiffs' allegation that USAA's "underwriting guidelines" authorized United Services to limit its offerings to members of the military "in pay grades E-7 or higher" (Dkt. No. 1 at 6, ¶ 11).  *See* Dkt. No. 22 at 13.  Now, on summary judgment, there can be no genuine dispute that USAA's Placement Rules are not its underwriting guidelines, so the Court should grant summary judgment for Defendants under the plain text of section 1861.16(b).

*Second*, even if section 1861.16(b) could be read to require commonly controlled insurers *generally* to insure ineligible policyholders, that would still not be the case for USAA.  Section 11628(f)(1) is a unique statutory provision that authorizes the USAA insurers to apply their mutually exclusive eligibility criteria notwithstanding any contrary provisions in the good-driver statutes.  It provides:

> Except as provided in Article 4 (commencing with Section 11620), nothing in this section or in Article 10 (commencing with Section 1861.01) of Chapter 9 of Part 2 of Division 1 or in any other provision of this code, shall prohibit an insurer from limiting the issuance or renewal of insurance, as defined in subdivision (a) of Section 660, to persons who engage in, or have formerly engaged in, governmental or military service

19

or segments of categories thereof, and their spouses, dependents, direct descendants, and former dependents or spouses.

Aside from exceptions in Article 4 of the Insurance Code (which neither party argues are relevant here), "*nothing*" "in Article 10 (commencing with Section 1861.01) of Chapter 9 of Part 2 of Division 1"—which is the very article of the Insurance Code that contains section 1861.16(b)—"shall prohibit an insurer from limiting the issuance or renewal of insurance" to "segments of" "persons who engage in" "military service," "and their spouses, dependents, direct descendants, and former dependents or spouses."  Ins. Code § 11628(f)(1) (emphasis added).  Breaking it down, section 11628(f)(1) has two key parts:

- First, it identifies an insurer's practice of limiting its offerings in a certain way.
- Second, it states that nothing in section 1861.16(b) "shall prohibit an insurer from sticking to that practice.

As to the first part, Plaintiffs cannot dispute that the practice of limiting insurance offerings in the manner described in section 11628(f)(1)—"limiting the issuance or renewal of insurance" to "segments" of "persons who engage in" "military service"—describes the very practice they challenge here.  Under the Placement Rules, United Services limits the issuance or renewal of insurance to a particular segment of the military, namely, those in pay grades E-7 and above.[2]

Nor can Plaintiffs dispute the second part—they are seeking to use section 1861.16(b) to prohibit United Services from adhering to its Placement Rules and limiting its insurance offerings to the specific segment of the military that it serves. Plaintiffs concede that they and the class members fall outside the narrow segment of the military that the Placement Rules allow United Services to insure.  Yet relying solely on section 1861.16(b), Plaintiffs challenge Defendants' refusal to offer them a

---

[2] The complaint and this Court's class certification order both used the language of segmentation to describe USAA's mutually exclusive Placement Rules.  Dkt. No. 49 at 6, ¶ 11 (alleging "[e]ach of the four USAA companies" insures "a different segment of the military"); Dkt. No. 133 at 2 (class certification order: "[e]ach of [the] four companies insurers members from different segments of the military").

"United Services policy." Dkt. No. 49 at 18, ¶ 42. Plaintiffs are trying to use section 1861.16(b) to prohibit Untied Services from doing just what section 11628(f)(1) says it may do *notwithstanding* section 1861.16(b).

Because the language of section 11628(f)(1) is "clear and unambiguous," this Court does not need to consider "extrinsic aids" like "legislative history" and any "administrative construction" to determine its meaning. *Nolan v. City of Anaheim*, 33 Cal. 4th 335, 340 (2004). But even if this Court were to consult those aides, they would only confirm Defendants' plain-text reading of the statute.

The legislative history of section 11628(f)(1) makes clear that it was designed to prevent policyholders from using the good-driver statutes to force United Services to insure those who are ineligible for the company. The Office of Senate Floor Analyses write-up on AB 327 (which enacted the initial wording of section 11628(f)(1)) begins by noting that the newly enacted Proposition 103 and accompanying good-driver statutes would require insurers "to offer a 'good driver discount' to eligible insureds meeting the good driver discount definition." RJN, Ex. 4 at p. 1. Section 11628(f)(1) would make clear that an insurer does not run afoul of the good-driver statutes when it "accepts applications and issues coverage to only a specific eligible group of individuals," such as "current and former personnel of the military" and their family members. *Id.* Likewise, an analysis prepared by the Assembly Committee on Finance and Insurance is explicit that the statute was specifically "designed to allow" specialty insurers like "USAA" "to continue refusing to offer or sell automobile insurance to any but active and retired military officers" and their family members—and to confirm that they are not "required to sell auto insurance to good drivers who do not meet their occupational underwriting restrictions." RJN, Ex. 5, at p. 1. Otherwise, policyholders could misread the good-driver statutes to try to force United Services to issue good-driver policies to individuals ineligible for the company, and "USAA would [be] forced to materially change its mode of operation to the extent that premium rates will rise." RJN, Ex. 3, at p. 1. That is exactly what Plaintiffs are attempting here.

21

The legislative history also shows that the legislature considered and rejected the
very sorts of policy arguments Plaintiffs have made in this case.  Opponents of section
11628(f)(1) argued it would improperly create an "exception" from the good-driver
statutes for "niche" insurers like United Services, with the "inevitable effect" being
"increased prices for those persons who do not fall within [the] "niche," i.e., Plaintiffs
and class members here.  RJN, Ex. 8, at pp. 1-2.  Proponents, including USAA,
explained it was important to reaffirm that United Services "can continue to accept as
members only those who meet our long-established eligibility criteria," meaning it
needed to sell good-driver policies only to "military officers and members of their
families who are 'good drivers.'"  RJN, Ex. 9.  A contrary rule would threaten USAA's
financial stability and break the "bond of mutual trust" it had formed over decades
with "military officers; people with a high sense of discipline, duty, and integrity."
RJN, Ex. 10, at p. 1.  The legislature weighed those competing considerations and
unanimously enacted section 11628(f)(1)—ensuring there would be no "change in the
Department of Insurance's regulatory scheme pertaining to the USAA's group
insurance program—a program which has consistently been rated #1 for policyholder
satisfaction in the state."  RJN, Ex. 6, at pp. 1-2; *see also, e.g.*, RJN, Ex. 7 at p. 1
(describing section 11628(f)(1) as clarifying United Services need only "offer their
eligible 'customers' a good driver discount").

Moreover, the legislature amended section 11628(f)(1) a year after enacting it,
making crystal clear that United Services could refuse to insure not only good drivers
wholly unaffiliated with the military, but also good drivers (like Plaintiffs and class
members) affiliated with the military but not a part of the particular segment of the
military that United Services served.  This amendment was prompted during the
consideration of AB 3683, which (for the first time) made it illegal for an insurer to
refuse to insure an individual on the basis that they were a member of the military.  *See*
RJN, Ex. 11.  To remove any conceivable doubt that this new protection against
discrimination would not require United Services to sell policies (good-driver or

1   otherwise) to members of the military ineligible for United Services, the legislature

2   amended section 11628(f)(1) to include the language authorizing insurers to serve only

3   "segments" of the military and their family members, and to do so notwithstanding

4   "any other provision" of the Insurance Code. *Id.* (section 11628(f)(1) amended to

5   clarify good-driver statutes were "not intended to change the marketing practice of

6   specialty insurers, such as United Services"); *accord* RJN, Ex. 12.

7       Another key "extrinsic aid" to construing section 11628(f)(1) is the prior

8   "administrative construction" of its terms. *Nolan*, 33 Cal. 4th at 340. And that is

9   likewise on all fours with Defendants' construction. The Department examined

10  USAA's Placement Rules and its compliance with the good-driver statutes, including

11  section 1861.16(b), nearly a decade ago. Dkt. No. 122-3 at 23-45. It explicitly called

12  out the language in section 11628(f)(1) authorizing insurers like United Services to

13  limit their offerings to segments of those engaged in military service, and it did not

14  remotely suggest that the USAA insurers might be violating section 1861.16(b) by

15  limiting their offerings in this manner. *Id.* To the contrary, the Department has

16  continued approving different rates for each USAA company built upon their mutually

17  exclusive eligibility criteria, it has required the USAA companies to include their

18  Placement Rules in the rate filings, and it has directed USAA to ensure that individuals

19  are being placed in the appropriate company in accordance with those Placement

20  Rules. *See supra* at pp. 6-8. The Department's "[h]istorical administrative practice"

21  regarding provisions of the Insurance Code it is charged with implementing is "entitled

22  to great respect in statutory construction," even if it is "not controlling" in the courts.

23  *Excelsior Coll. v. Bd. of Registered Nursing*, 136 Cal. App. 4th 618, 628 (2006).

24      At the dismissal stage, Judge Bencivengo agreed with Plaintiffs "that there is no

25  indication in section 11628(f)(1) that it provides an exemption to section 1861.16(b)'s

26  mandate" for commonly controlled insurers to offer insurance to each other's insureds.

27  Dkt. No. 22 at 12. That interlocutory ruling is not binding on this Court (*see supra* at

28  p. 17 n.1). And the text, legislative, history, and prior administrative construction of

section 11628(f)(1) all point in the exact opposite direction: The general mandate in section 1861.16(b) does not trump the specific authorization in 11628(f)(1) that allows United Services to limit its offerings to a specific segment of the military. *See, e.g.*, *Thai v. Richmond City Center, LP*, 86 Cal. App. 5th 282, 290 (2022) ("Under the well-established rule of statutory construction, a specific statute controls over a general statute covering the same subject." (cleaned up)). The legislature made this order of operations doubly clear when it specified that "nothing" in the Insurance Code would prevent the USAA insurers from serving only a discrete segment of the military, as United Services does for those in pay grades E-7 and above. Ins. Code § 11628(f)(1).

Judge Bencivengo disagreed, prioritizing section 1861.16(b)'s general requirements over section 11628(f)(1)'s specific authorization, and concluding that this construction would "harmonize[]" the two provisions. Dkt. No. 22 at 12-13. But the Court overlooked that the legislature had already harmonized them the other way around. The Court's cited authority for the ability to "harmonize" statutes did not involve statutes that cross-referenced each other (let alone that specified which trumped the other). *See Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1150-51 (2020). In drafting section 11628(f)(1), the legislature made clear that it controlled over "any" other provision of the Insurance Code, which necessarily includes section 1861.16(b). *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind'"). Thus, the legislature already harmonized the statutes, leaving no room for courts to introduce dissonance through construction.

Further, even if the text and extrinsic aids left some uncertainty about whether section 11628(f)(1)'s specific authorization controlled over section 1861.16(b)'s general requirement, Defendants' reading is still the only viable one. Where a statute is susceptible to two reasonable interpretations, courts follow the one that would produce "reasonable" outcomes over one that would cause "absurd consequences" or "results contrary to the Legislature's apparent purpose." *People ex rel. Lungren v.*

24

*Superior Court*, 14 Cal. 4th 294, 305 (1996). Here, Plaintiffs' reading would cause tens of thousands of GIC policyholders (70% of the company's policyholders) to be charged rates drawn up with no consideration of their loss history, in lieu of rates that were literally *designed for them*. Plaintiffs have never tried to explain how this would be actuarially sound. It would result in policyholders paying arbitrary rates, which would frustrate the purpose of Proposition 103: to ensure that rates are not "excessive, inadequate," or "unfairly discriminatory." *20th Century Ins. Co. v. Garamendi*, 8 Cal. 4th 216, 243 (1994). And it would expose Defendants to potential civil penalties for charging unapproved rates. *See* Ins. Code § 1858.07.

In sum, it is neither "unlawful" nor "unfair" for GIC to charge Department-approved rates, and for United Services to decline to insure Plaintiffs and other policyholders who do not meet the company's narrow eligibility criteria.

### C. At a minimum, partial summary judgment should be entered in favor of United Services on Plaintiffs' and the class's restitution request.

At a minimum, the Court should grant partial summary judgment to United Services on the request for restitution. To obtain restitution under the UCL, a plaintiff must show that the defendant is in possession of money or property in which plaintiff has an ownership interest. *Korea Supply Co. v. Lockheed Martin Corp.* 29 Cal. 4th 1134, 1149 (2003). There is no dispute that Plaintiffs and the class never gave United Services a penny, so they obviously cannot obtain restitution from United Services.

## V. CONCLUSION

The Court should enter summary judgment for Defendants or, at a minimum, partial summary judgment on Plaintiffs' request for restitution from United Services.

Dated: July 31, 2024                     GIBSON, DUNN & CRUTCHER LLP


                                         By: _____*/s/ Kahn A. Scolnick*_____
                                              Kahn A. Scolnick

                                         *Attorney for Defendants*