# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EILEEN-GAYLE COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED SERVICES AUTOMOBILE ASSOCIATION, et al.,<br><br>Defendants. | Case No.: 21-cv-217-RSH-KSC<br><br>**ORDER ADDRESSING PENDING MOTIONS**<br><br>[ECF Nos. 167, 169, 173, 174, 179, 181, 189] |

Pending before this Court are, among other motions, (1) a motion for summary judgment filed by defendants United Services Automobile Association ("United Services") and USAA General Indemnity Co. ("GIC") [ECF No. 173] and (2) a motion for partial summary judgment filed by class representatives Eileen-Gayle Coleman and Robert Castro [ECF No. 169].

United Services Automobile Association ("USAA") offers insurance to members of the military and their families through its subsidiaries, including United Services and GIC. USAA has placement rules under which commissioned officers and higher-ranking enlisted personnel are assigned to United Services, and other enlisted personnel are assigned to GIC. Based on historic losses among the respective pools of policyholders, the

California Department of Insurance has approved rates that are lower for United Services and higher for GIC.

California Insurance Code section 1861.16(b) provides that, where insurers have common ownership, they must offer to statutory "good drivers" a discount policy from whichever insurer within that common ownership offers the lowest rates, "notwithstanding the underwriting guidelines of any of those insurers." Roughly 70% of GIC's insureds—approximately two million individuals—are statutory good drivers. Plaintiffs contend that, despite USAA's placement rules, and despite the fact that the Department approved rates for each company based on historic losses of their policyholders, Section 1861.16(b) requires USAA to assign those individuals to United Services rather than GIC and to charge them the lower United Services rates.

Another provision of the California Insurance Code, section 11628(f)(1), provides that nothing in the code "shall prohibit an insurer from limiting the issuance or renewal of insurance … to persons who engage in … governmental or military service or segments of categories thereof," and their families. Defendants contend that under this statute, United Services may limit its issuance of insurance to "segments" of servicemembers, as set forth in USAA's placement rules, even where the would-be insured is a statutory good driver.

This case presents a legal question of first impression: Whether Section 1861.16(b) requires USAA to assign all statutory good drivers to the USAA subsidiary with the lower rate, or whether Section 11628(f)(1) protects USAA's ability to assign insureds, including good drivers, in accordance with its placement rules.[1] The Court concludes that under the clear language of the relevant statutes, the Insurance Code does not compel USAA to ignore its placement rules that limit insurance "to persons who engage in … governmental

---

[1]  This legal question may not, in practical terms, have any present application beyond the USAA group of insurance companies. At oral argument, neither party was aware of any auto insurance company doing business in California with placement rules that assign insureds to its subsidiaries based on the military rank of the insured.

or military service or segments of categories thereof." Based on this conclusion, Defendants are entitled to summary judgment.

As set forth below, the Court grants Defendants' motion for summary judgment, and denies Plaintiffs' motion for partial summary judgment.

## I. BACKGROUND

### A. Undisputed Facts

Defendant USAA is a reciprocal interinsurance exchange composed of affiliated insurance companies. ECF No. 192 (Joint Statement of Undisputed Facts) at 2. Four affiliated companies in the USAA corporate family provide auto insurance to different segments of the military or their family members, including defendants United Services and GIC. *Id.* Plaintiffs formerly served as enlisted military personnel with a highest pay grade below E-6, and had (or still have) auto insurance through GIC for vehicles garaged in California. *Id.*

The eligibility rules for each USAA company are mutually exclusive; military members and their families are eligible to purchase policies from only one of the USAA entities. *Id.* at 3. USAA describes the specific eligibility criteria for the four companies in its placement rules, which have been revised periodically over the years. *Id.* As relevant here, the placement rules dictate that United Services insures, among other categories of policyholders, "[c]ommissioned and warrant officers in the U.S. Armed Forces [and] [s]enior non-commissioned/petty officers, defined as E-7 or above in the U.S. Armed Forces … on active duty … or retired from active duty … or separated with a discharge type of 'Honorable' from active duty." The placement rules also dictate that GIC insures, with one other category of policyholders, "[e]nlisted and junior non-commissioned officers, defined as E-1 through E-6 in the U.S. Armed Forces … on active duty … or retired from active duty … or separated with a discharge type of 'Honorable' from active

duty." *Id.*[2] United Services and GIC operate under common management and control. *Id.* at 2.

Since 1989, insurance companies in California—including the four USAA affiliates depending on when they began operations in the State—have had to secure prior approval from the California Department of Insurance (the "Department") for the rates that are used to set the premiums they charge policyholders. *Id.* at 3. The Department's prior-approval rate-setting process is regulated and data-driven. *Id.* The process is designed to ensure that the ultimate rate filed with the Department is not excessive, inadequate or unfairly discriminatory. Automobile "insurance rates … must be approved by the commissioner prior to their use." Cal. Ins. Code § 1861.01(c). The Department's rate-setting process requires that each insurer set its rates based partly on the amounts it has historically paid out to its policyholders to settle claims. ECF No. 192 at 4. Historical losses are used to project future losses. *Id.*

USAA has submitted rate applications that contain separate base rates for each of its four insurance companies, including United Services and GIC. *Id.* at 5. The average GIC policyholder has a history of greater losses than the average United Services policyholder, and the Department has approved USAA's applications for higher base rates for GIC than for United Services at all relevant times. *Id.* at 6. The discrepancy in premiums paid by United Services' and GIC's insureds is a result of each group's corresponding history of losses, and the role those historical losses play in setting each company's base rates. *Id.*

If an insured meets the statutory good driver qualifications pursuant to California Insurance Code section 1861.025, the insured receives at least 20 percent below the rate the insured would otherwise have been charged for the same coverage. *Id.* at 5. At all

---

[2] Plaintiffs have adopted the shorthand of referring to GIC's policyholders as "enlisted personnel" rather than as "current or former personnel whose highest paygrade was E-6 or below," and referring to United Services' policyholders simply as "officers." ECF No. 182 at 2 n.4. The Court adopts the same convention herein.

relevant times, both GIC and United Services have applied a 20% discount on the total premium amount for insureds who qualify as statutory good drivers. *Id.* Plaintiffs Coleman and Castro—insured by GIC in accordance with USAA's placement rules—qualified for and received a good driver discount for each six-month policy period during the relevant period. *Id.*

### B. Procedural History

Plaintiffs filed their original putative class action Complaint on February 4, 2021, alleging six claims. ECF No. 1. On June 22, 2021, the Court granted in part Defendants' motion to dismiss, dismissing two of Plaintiffs' claims under California's Unfair Competition Law ("UCL") that were based on an underlying violation of Section 790.03(b) of the California Unfair Insurance Practices Act. ECF No. 22. On November 15, 2021, Plaintiffs filed the operative First Amended Complaint ("FAC"). ECF No. 49. The FAC alleges four claims, for violation of: (1) the UCL, based on "unlawful" conduct in violation of California Insurance Code section 1861.16(b); (2) the UCL, based on "unfair" conduct in violation of that same section; (3) the Unruh Civil Rights Act, Cal. Civ. Code § 51; and (4) California Military and Veterans Code section 394(a). *Id.*

On April 14, 2022, Plaintiff's filed their initial motion for class certification. ECF No. 58. The case was thereafter reassigned to the undersigned. ECF No. 66. On March 21, 2023, this Court denied Plaintiffs' motion for class certification. ECF No. 109.

On June 27, 2023, Plaintiffs filed a renewed motion for class certification. ECF No. 119. On December 22, 2023, the Court granted the motion in part. ECF No. 133. The Court certified the following class as to Claim One of the FAC:

> The "unlawful" UCL claim asserted on behalf of the Good Driver Class, which comprises:
>
> All enlisted persons who (a) at any time on or after December 28, 2017, purchased or renewed an automobile insurance policy including collision coverage from GIC, (b) qualified as good drivers under Cal. Ins. Code § 1861.025 according to USAA's records, (c) were not offered a good driver discount from United Services, (d) paid more for

>that policy than they would have paid in United Services, and (e) at any time in which clauses (a) through (d) have been satisfied, garaged vehicles in the State of California.

*Id.* at 58. The Court declined to certify a class as to Claim Two, the "unfair" UCL claim. *Id.* at 46.

On January 26, 2024, upon stipulation of the Parties, the Court dismissed Claims Three and Four. ECF Nos. 139, 140. Thus, the pending claims in the FAC are Claim One, a class claim for violation of the UCL based on "unlawful" conduct, and Claim Two, an individual claim for violation of the UCL based on "unfair" conduct.

Defendants' motion for summary judgment, and Plaintiffs' motion for partial summary judgment, have been fully briefed.[3] Also pending are several motions to exclude portions of reports, declarations, or testimony by opposing experts or attorneys. ECF Nos. 167, 174, 179, 181, 189. Additionally, each party has requested that the Court take judicial notice of certain documents. ECF Nos. 173-3, 180.[4] On December 12, 2024, the Court held a hearing on the pending motions, and took them under submission. ECF No. 207.

## II. LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

---

[3] The Court allowed Plaintiffs to file a sur-reply in opposition to Defendants' summary judgment motion. *See* ECF Nos. 200, 201.

[4] The requests for judicial notice are unopposed and accordingly are granted.

The movant always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden by: (1) presenting evidence that negates an essential element of the nonmoving party's case; or (2) demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id*. at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

If the movant fails to discharge this initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970). If the moving party meets this initial burden, however, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." (citing *Anderson*, 477 U.S. at 242, 252)). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment . . . ." *Anderson*, 477 U.S. at 255.

//
//
//

## III. ANALYSIS

Here, all Parties contend that this case is suitable for disposition on summary judgment in light of the undisputed facts. ECF No. 169-1 at 1, 7; ECF No. 173 at 1-2; ECF No. 182 at 1.

### A. California Insurance Code Provisions

Plaintiffs' UCL claims are based on alleged violations of Section 1861.16(b), which provides:

> An agent or representative representing one or more insurers having common ownership or operating in California under common management or control shall offer, and ***the insurer shall sell, a good driver discount policy to a good driver from an insurer within that common ownership, management, or control group, which offers the lowest rates for that coverage***. This requirement applies notwithstanding the underwriting guidelines of any of those insurers or the underwriting guidelines of the common ownership, management, or control group.

Cal. Ins. Code § 1861.16(b) (emphasis added). Given that United Services and GIC are under common management and control, Plaintiffs argue that Defendants violate this statute when they fail to assign all statutory good drivers to United Services. *See* ECF No. 182 at 4 ("[T]he class contends that USAA wrongly sold enlisted good drivers policies from GIC instead of from United Services."); ECF No. 169-1 at 7-8 ("By placing class members with GIC without regard to whether United Services offers the lowest rates for good driver discount policy coverage, USAA is violating § 1861.16(b) on its face.").[5]

Defendants invoke Section 11628(f)(1), which provides:

> Except as provided in Article 4 (commencing with Section 11620), ***nothing*** in this section or in Article 10 (commencing with Section

---

[5] Plaintiffs are not arguing that GIC had an obligation to retain its insured good drivers but offer them a discounted or lower rate based on what United Services would have charged. *See* ECF No. 182 at 18 ("[T]his case is about which policies (GIC's or United Services') should be offered to class members. It's about the sale of the wrong policies ….").

> 1861.01) of Chapter 9 of Part 2 of Division 1 or in any other provision of this code, **shall prohibit an insurer from limiting the issuance or renewal of insurance**, as defined in subdivision (a) of Section 660, ***to persons who engage in, or have formerly engaged in, governmental or military service or segments of categories thereof***, and their spouses, dependents, direct descendants, and former dependents or spouses.

Cal. Ins. Code § 11628(f)(1) (emphasis added).[6] Section 1861.16(b) falls within Article 10 of Chapter 9 of Part 2 of Division 1 of the Insurance Code. Accordingly, Section 11628(f)(1) provides that nothing in Section 1861.16(b) "shall prohibit an insurer from limiting the issuance or renewal of insurance … to persons who engage in, or have formerly engaged in, governmental or military service or segments of categories thereof …." Defendants contend that this statute permits United Services to limit their insurance offerings to officers, and protects them from Plaintiffs' claim that United Services was required to insure all good drivers regardless of rank.

### B. Statutory Interpretation

A federal court exercising diversity jurisdiction construes a state statute under the state's rules of statutory construction. *See Powell's Books, Inc. v. Kroger*, 622 F.3d 1202, 1209 (9th Cir. 2010) ("[O]ur role is to 'interpret the law as would the [California] Supreme Court'"). Accordingly, this Court construes the California Insurance Code under California rules of statutory interpretation. The California Supreme Court has described the task of statutory interpretation as follows:

> Our fundamental task is to determine the Legislature's intent and give effect to the law's purpose. We begin by examining the statute's words because they generally provide the most reliable indicator of legislative intent. If the statutory language is clear and unambiguous our inquiry ends. However, we will not give statutory language a literal meaning if doing so would result in absurd consequences that the Legislature could not have intended.

---

[6]   No party contends that the exception to Section 11628(f) recited at the outset, "Except as provided in Article 4 (commencing with Section 11620)," applies here.

*In re D.B.*, 58 Cal. 4th 941, 945-46 (2014) (citations and quotation marks omitted). *See also People v. Orozco*, 9 Cal. 54th 111, 122 (2020) ("Because the [statutory] language … is clear … we need not look to extrinsic sources for guidance."); *Frlekin v. Apple Inc.*, 8 Cal. 5th 1038, 1046 (2020) ("We … begin with the text. If it is clear and unambiguous our inquiry ends.") (quotation marks omitted). A court considers statutory language "in its 'broader statutory context' and, where possible, harmonize[s] that language with related provisions by interpreting them in a consistent fashion." *ZB, N.A. v. Super. Ct.*, 8 Cal. 5th 175, 189 (2019). If ambiguity remains after this textual analysis, a court "may consider extrinsic sources such as legislative history and contemporaneous administrative construction." *Id.*

Here, as discussed above, Section 11628(f)(1) provides that nothing in Section 1861.16(b) (among other provisions) "shall prohibit an insurer from limiting the issuance or renewal of insurance …. to persons who engage in … military service or segments of categories thereof …." At the hearing, Plaintiffs agreed that the term "segments" here includes distinctions based on ranks of servicemembers. Plaintiff also agreed that Section 11628(f)(1) allows an insurance company to only provide insurance to members of the military who have certain ranks. That is precisely what United Services and GIC do, using USAA's placement rules: Officers are insured by United Services, and enlisted personnel are insured by GIC. Yet this is also precisely what Plaintiffs challenge. They contend that United Services must insure statutory good drivers regardless of whether they fall within a segment of the military (enlisted personnel) that United Services would otherwise insure. On its face, Section 11628(f)(1) is clear and unambiguous: Plaintiffs may not rely on Section 1861.16(b) to argue, as they do here, that United Services is prohibited from drawing a distinction between officers (whom it insures) and enlisted personnel (whom it does not).

Plaintiffs argue that this application of Section 11628(f)(1) creates a "conflict" with Section 1861.16(b), which the Court is required to "harmonize." ECF No. 182 at 7.

However, there is no conflict here. Section 1861.16(b) imposes an obligation, and Section 11628(f) expressly imposes a limitation on that obligation: "[N]othing in this section or in Article 10 (commencing with Section 1861.01) of Chapter 9 of Part 2 of Division 1 or in any other provision of this code, shall prohibit …." The purpose of Section 11628(f), as manifest in its language, is to ensure that certain other laws (including Section 1861.16(b)) do not prohibit an insurer from choosing to provide insurance only to members of the military or certain segments of the military, precisely what USAA does here. Plaintiffs appear to agree that this is what Section 11628(f)(1) was *intended* to do. *See* ECF No. 182 at 10 ("It stands to reason that the purpose of the amendment in 1990, adding the words 'or segments … thereof,' was to allow USAA to continue to limit its sales to officers and limited categories of government employees, without requiring it to sell to good drivers who were enlisted or to most governmental personnel.").

A statutory scheme that provides a rule, and thereafter provides an exception or limitation to the rule, is not in conflict with itself and does not need to be harmonized. There are other statutory exceptions to the requirement contained in Section 1861.16(b). For example, Section 1861.16(c) provides an exception to that requirement where the California Insurance Commissioner determines that certain conditions are satisfied (not at issue here). As another example, Section 1861.02(b)(3)(A), allows motor clubs like AAA to require membership as a condition of obtaining insurance. These exceptions are not in conflict with the requirements that they suspend or limit. Neither is Section 11628(f).

As the Court interprets it, Section 11628(f)(1) does not, in any general sense, negate or nullify Section 1861.16(b). Most applications of Section 1861.16(b) would not implicate Section 11628(f)(1) at all. Indeed, even in the highly specific context of *a group of insurers under common ownership or management who insure members of the military*, Section 11628(f)(1) might not serve to limit Section 1861.16(b) in any way, depending on the facts. For example, if each insurer within the group limited its insurance offerings to members of the military only, without distinguishing between ranks, then the "lowest good driver discount" requirement contained in Section 1861.16(b) would still apply within that group.

Such a requirement would not somehow "prohibit" any of the insurers from "limiting the issuance" of insurance to persons engaged in military service or segments thereof. Moreover, if each insurer within the group limited its insurance offerings to members of the military within certain ranks—but there was overlap, such that more than one insurer provided insurance to a persons of a certain rank—then the requirement of Section 1861.16(b) would *still* obligate the group of insurers to offer the lowest good driver discount to persons of that particular rank. In contrast, here, United Services and GIC have mutually exclusive placement guidelines, each covering different segments of the military and their family members. This means that under Section 11628(f)(1), the "lowest good driver discount" requirement does not apply to require United Services to insure good drivers who, by virtue of their rank, fall outside of the military segment that United Services insurers. The manner in which Section 11628(f)(1) serves to limit Section 1861.01(b) is thus quite limited in scope—and as a practical matter, may only apply to USAA, if it is indeed the only group that offers similar policies in California.

Plaintiffs also invoke the interpretive principle that a specific statute controls over a general statute covering the same subject. ECF No. 182 at 13 (citing *Estate of Kramme*, 20 Cal. 3d 567, 576 (1978)). But this principle does not support Plaintiffs' position. Section 11628(f)(1) specifically provides for a limitation of other statutes, using language that encompasses Section 1861.16(b). In contrast, Section 1861.16(b) contains no similar language limiting or suspending the application of other statutes like Section 11628(f)(1).

In short, the statutory language of Section 11628(f)(1) reflects a legislative intent to allow insurers to limit their offerings to members of the military, or to members of certain ranks or other segments of the military—even if another enumerated portion of the Insurance Code would provide otherwise. Although it is unnecessary in these circumstances to consider extrinsic evidence like legislative history, the legislative history of Section 11628(f)(1) does not help Plaintiffs either; it does not appear to conclusively address the interplay between that statute and Section 1861.16(b). *See* ECF No. 182 at 8-

11. Accordingly, under California rules of statutory interpretation, the Court concludes that Section 11628(f)(1) is clear and unambiguous.[7]

### C. Proposition 103

Plaintiffs also contend that Defendants' interpretation of Section 11628(f)(1) would run afoul of considerations, unique to the insurance context, relative to Proposition 103. ECF No. 182 at 12-13. Proposition 103, the "Insurance Rate Reduction and Reform Act," was passed by California voters on November 8, 1988. Cal. Ins. Code, § 1861.01. The intention of Proposition 103 was to "protect consumers from arbitrary insurance rates and practices, to encourage a competitive insurance marketplace, to provide for an accountable insurance commissioner and to ensure that insurance is fair, available, and affordable for all Californians." *Found. for Taxpayer & Consumer Rts. v. Garamendi*, 132 Cal. App. 4th 1354, 1359 (Ct. App. 2005). The voters further provided in subdivision (b) of section 8 that "[t]he provisions of this act shall not be amended by the Legislature except to further its purposes." *Id.* Plaintiffs argue that Defendants' interpretation of Section 11628(f)(1) would be an unlawful amendment of Proposition 103 that fails to further the purposes of that ballot measure; and they also urge that Proposition 103 "requires liberal construction to fully promote its underlying purposes, to protect consumers from arbitrary insurance rates and practices … and to ensure that insurance is fair, available, and affordable for all Californians." *Mercury Ins. Co. v. Lara*, 35 Cal. App. 5th 82, 103 (Ct. App. 2019) (internal quotation marks and citations omitted). Plaintiffs identify three cases in which California courts have invalidated statutes as unlawful amendments to Proposition 103. *Amwest Surety Ins. Co. v. Wilson*, 11 Cal. 4th 1243, 1265 (1995); *Found. for Taxpayer & Consumer*

---

[7] The Court is mindful that, at the outset of the case, it denied Defendants' motion to dismiss the Complaint based on Section 11628(f)(1). ECF No. 22 at 12. As Plaintiffs agreed at the hearing of the pending motions, that earlier ruling does not constrain the Court—in the context of the record that has been developed on the Parties' summary judgment motions—in interpreting the same statute here.

*Rts.*, 132 Cal. App. 4th at 1364-6 (Ct. App. 2005); *Proposition 103 Enforcement Project v. Quackenbush*, 64 Cal. App. 4th 1473, 1494 (Ct. App. 1998).

Among the numerous changes effected by Proposition 103, Plaintiffs focus on the "take all comers" provision, codified at Section 1861.02(b), that requires all insurers to provide a Good Driver Discount policy to any person who meets the requisite standards. ECF No. 182 at 9. Plaintiffs contend that "[a]n interpretation of section 11628(f)(1) that undermines Proposition 103's 'all comers' requirement, as manifested by sections 1861.02(b)(1) and 1861.16(b), would be contrary to the expressed intent of the electorate and, under California law, render that statute an unlawful amendment to Proposition 103." *Id.* at 13.

The Court disagrees. Although the "take all comers" provision codified at Section 1861.02(b) was part of Proposition 103, Plaintiffs conceded at the hearing that the statute on which they rely here, Section 1861.16(b), is *not* part of Proposition 103. Accordingly, to the extent Section 11628(f)(1) imposes a limitation on the requirement contained in Section 1861.16(b), it is not limiting or otherwise amending Proposition 103. Because Section 11628(f)(1) does not amend Proposition 103, the Court has no occasion to consider whether such amendment "further[s] the purposes" of Proposition 103. *See Proposition 103 Enforcement Project*, 64 Cal. App. 4th at 1484 ("If [a statute] does not amend the provisions of Proposition 103, then we need not consider whether [that statute] furthers the purpose of Proposition 103.").

Additionally, Plaintiffs fail to adequately explain *how* the Court's interpretation of Section 11628(f)(1) would effect an unlawful amendment to Proposition 103. Plaintiffs' counsel agreed at the hearing that Section 11628(f)(1) does not run afoul of Proposition 103 by allowing an insurer to issue policies to segments of the military only—thereby creating an exception to Proposition 103's "take all comers" requirement as contained in Section 1861.02(b)(1). Yet if Section 11628(f)(1) is valid in this respect, in which it actually modifies a requirement of Proposition 103, then it is no less valid in limiting the "lowest good driver discount" requirement that is *not* part of Proposition 103. Even

liberally constructing Proposition 103 to promote its underlying purposes, that ballot measure does not alter the Court's interpretation of the clear and unambiguous language of Section 11628(f)(1).

### D. Summary Judgment and Other Motions

The Court concludes that under the clear language of Section 11628(f)(1), USAA is entitled to follow its placement rules that limit insurance "to persons who engage in … governmental or military service or segments of categories thereof." Section 1861.16(b) does not require United Services to insure a good driver who does not otherwise qualify for insurance from United Services under USAA placement rules. Based on this conclusion, Defendants are entitled to summary judgment on Plaintiffs' UCL claim based on "unlawful" conduct (Claim One). In light of the disposition herein, the Court does not reach the other arguments raised in Defendants' summary judgment motion.

Also pending is Plaintiff's UCL claim based on "unfair" conduct (Claim Two). As set forth in the FAC, that claim is based on the same alleged violation of the same statute, Section 1861.16(b). At the hearing, Plaintiffs' counsel agreed that the two claims stand or fall together with the Court's interpretation of the relevant statutes. The Court concludes that summary judgment for Defendants is warranted on both Claims One and Two.

Plaintiffs' motion for partial summary judgment seeks rulings: (1) "that USAA's Placement Rules violate § 1861.16(b)"; and (2) in opposition to Defendants' proposed expert trial testimony, "that recalculating base rates and relativities based on a combined risk pool of GIC's and United Services' policyholders in order to identify injured GIC policyholders or estimate the amount of their restitution conflicts with Section 1861.16(b)." ECF No. 169-1 at 2. In light of the analysis herein, the Court denies the first request, and denies as moot the second request.

The motions to exclude are directed to testimony, declarations, or reports that the Court did not rely on in this Order. Accordingly, the Court denies those motions as moot.

### IV. CONCLUSION

For the foregoing reasons, the Court:

1.    **GRANTS** Defendants' motion for summary judgment [ECF No. 173].

2.    **DENIES** Plaintiff's motion for partial summary judgment [ECF No. 169].

3.    **DENIES AS MOOT** the motions to exclude [ECF Nos. 167, 174, 179, 181, 189].

4.    **DIRECTS** the Clerk of Court to enter judgment for Defendants.

**IT IS SO ORDERED**.

Dated: January 9, 2025

_____
Hon. Robert S. Huie
United States District Judge